[No. B140743. Second Dist., Div. Five. Jan. 28, 2002.]

THE PEOPLE ex rel. DEPARTMENT OF CORPORATIONS, Plaintiff, v. SPEEDEE OIL CHANGE SYSTEMS, INC., et al., Defendants and Respondents;
DONALD ALMEN et al., Interveners and Appellants.

[No. B144629. Second Dist., Div. Five. Jan. 28, 2002.]

THE PEOPLE ex rel. DEPARTMENT OF CORPORATIONS, Plaintiff, v. CALNEVA OIL CORPORATION, Defendant and Appellant;
DONALD ALMEN et al., Interveners and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.A.1 and III.A.2, the heading for part III.A.3, the designated portion of part III.A.3, and parts III.A.4, III.A.5, III.A.6, III.B, III.C, and IV of the majority opinion.

**COUNSEL**

Terrence A. Beard for Interveners and Appellants.

Law Office of Robert A. Huddleston and Robert A. Huddleston for Defendant and Appellant.

Hogan & Hartson, Edward C. Duckers, Christopher L. Killion; and Craig Whitney for Defendant and Respondent Mobil Oil Corporation.

Barry R. Schlom for Defendants and Respondents SpeeDee Oil Change Systems, Inc., NoCal, Inc., Gary L. Copp, and Kevin M. Bennett.

Law Office of Robert A. Huddleston and Robert A. Huddleston for Defendants and Respondents CalNeva Oil Corporation, James Philpot, W. James Musser and Richard Philpot.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

On July 29, 1994, the Department of Corporations (the department), on behalf of the People of the State of California, filed an action against a franchisor and others for violations of the Franchise Investment Law, Corporations Code[1] section 31000 et seq. (the department's action). Defendants included: the franchisor, SpeeDee Oil Change Systems, Inc. (SpeeDee Oil); NoCal, Inc. (apparently an assignee of SpeeDee Oil); CalNeva Oil Corporation (CalNeva), a subfranchisor; and individual officers and directors of the corporate defendants. Numerous franchisees intervened in the department's action. The plaintiffs in intervention are Donald and Belva Almen, Jon Andersen, Jerry and Kathleen Beezley, Mike and Karolyn Bradley, M.G. Han, Jeff Howe, Samuel Lau, and Christopher Mack. Ultimately, however, the department's action and the franchisees' complaints in intervention were tried separately.

The present appeals arise out of the franchisees' action against SpeeDee Oil, CalNeva, and others. This opinion addresses appeals in case Nos. B144629 and B140743 that were consolidated for purposes of oral argument and decision. In case No. B144629, the franchisees appeal from a judgment entered following a jury trial and a postjudgment order granting CalNeva's new trial motion.[2] CalNeva cross-appeals from: the judgment; a postjudgment order denying its motion for a judgment notwithstanding the verdict; and a postjudgment order denying its motion to vacate the judgment and enter a different judgment. In case No. B140743, the franchisees appeal from a nonsuit order in favor of: SpeeDee Oil; NoCal, Inc.; Gary L. Copp, president and director of SpeeDee Oil; Kevin Bennett, executive vice-president, director, and secretary of SpeeDee Oil; Mobil Oil Corporation (Mobil), a contractual supplier to CalNeva franchisees; James Philpot, president and chief financial officer of CalNeva; W. James Musser, senior vice-president of CalNeva; and Richard Philpot, secretary of CalNeva.

---

[1]All further statutory references are to the Corporations Code except where otherwise noted.

[2]The franchisees also appeal from postjudgment orders: denying a motion for judgment notwithstanding the verdict; denying a motion to vacate the judgment and enter a different judgment; and declaring moot a motion for costs and attorney fees. However, the franchisees have not raised any specific issue on appeal as to those postjudgment orders. As a result, any error is waived and the orders will be affirmed. (*Building etc. Assn. v. Richardson* (1936) 6 Cal.2d 90, 102 [56 P.2d 1221]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457].)

## II. BACKGROUND

As noted above, the department's action was filed on July 29, 1994. The department's complaint alleged SpeeDee Oil directly operated and controlled the franchises, which provide oil change service. Further, the department alleged SpeeDee Oil and CalNeva, including individual officers and directors acting as such, conspired to and did offer and sell oil change franchises in violation of sections 31200, 31201, 31202, and 31110, which are part of the Franchise Investment Law. The charging allegations of the department's July 24, 1999, complaint specifically asserted that SpeeDee Oil and CalNeva, as well as their named officers and directors: filed uniform franchise offering circulars with the Commissioner of Corporations containing false or misleading statements as to the existence of in-force trademarks and the provision of site selection assistance, training, and advertising fund reports in violation of section 31200; provided untrue oral and written information to prospective franchisees (in addition to that in the uniform franchise offering circulars) concerning the provision of site selection assistance, training, and other assistance necessary to operate a franchise, and provided untrue analysis of expected profitable returns (including written projections provided by CalNeva) in violation of section 31201; provided uniform franchise offering circulars to prospective franchisees that contained material misstatements and omitted to disclose relevant facts as to the existence of in-force trademarks and the provision of site selection assistance, training, and advertising fund reports, in violation of section 31202; and offered and sold unregistered, nonexempt SpeeDee Oil franchises in violation of section 31110.

On October 18, 1994, the franchisees filed an ex parte application to intervene pursuant to Code of Civil Procedure section 387. On October 21, 1994, the franchisees were granted leave to intervene in the department's action. On that date, October 21, 1994, the complaint in intervention was filed.

The operative pleading is the second amended complaint in intervention filed on October 10, 1995. The franchisees joined in the causes of action asserted in the department's July 29, 1994, complaint. In addition, the franchisees asserted causes of action for: fraud; negligent misrepresentation; conspiracy; intentional infliction of emotional distress; breach of contract; unfair business practices (Bus. & Prof. Code, § 17200); Cartwright Act violations (Bus. & Prof. Code, § 16700); declaratory relief; and injunctive relief. The franchisees dismissed their unfair business practices claim as to all defendants prior to trial. The Cartwright Act violation allegations were

also adjudicated adversely to the franchisees prior to trial. There is no issue in this case as to any Business and Professions Code section 17200 claims nor are there any antitrust questions presented. On August 23, 1995, CalNeva filed a cross-complaint against the franchisees. The cross-complaint alleged breaches of the local franchise agreements and intentional misrepresentation.

The department's action and the franchisees' complaint in intervention were severed for trial. The department's action was tried in June 1996. Judge Richard P. Kalustian issued a statement of decision on March 4, 1997. As to SpeeDee Oil, Judge Kalustian found it failed to reregister two service marks and to disclose the lapsed registration to franchisees; however, no franchisee suffered any detriment as a result of the lapsed registrations. With respect to CalNeva, Judge Kalustian found it violated the Franchise Investment Law by, between September 1992 and April 1993, failing to notify prospective franchisees that SpeeDee Oil had failed to reregister its two service marks (although no franchisee suffered detriment as a result); creating the misimpression in its uniform franchise offering circulars "that a substantial number of franchisees were either in the process of building their stores or very close to it"; misrepresenting the time actually required to open a location after signing a local franchise agreement; misrepresenting available site selection assistance; making improper representations regarding potential earnings; and misrepresenting the costs to open a franchise. A judgment in favor of the department was entered on September 18, 1997. Permanent injunctions were issued as against SpeeDee Oil and CalNeva as well as their responsible officers and directors. They were enjoined from offering or selling franchises in California in violation of any provision of law including but not limited to the Franchise Investment Law. In addition, civil penalties were imposed against the corporate defendants. Civil penalties were imposed against SpeeDee Oil for failure to disclose the lapsed service mark registrations.

In December 1997, SpeeDee Oil and CalNeva appealed the judgment in favor of the department. SpeeDee Oil's appeal was dismissed in November 1998 for failure to procure the record on appeal. (Cal. Rules of Court, rule 10(c).) The remittitur was issued on January 14, 1999. In an opinion filed on November 18, 1999, we affirmed the judgment as to CalNeva, Mr. Philpot, and W. James Musser. (*People v. CalNeva Oil Corp.* (Nov. 18, 1999, B118187) [nonpub. opn.].)

The matter proceeded, albeit very slowly, as to the franchisees' claims. In 1998, Judge Kalustian granted a summary judgment in favor of SpeeDee Oil officers and two directors, Mr. Copp and Mr. Bennett. The franchisees

appealed. In an opinion filed on May 28, 1999, we held, inter alia, that by intervening and joining in the department's claims against SpeeDee Oil and others, the franchisees had stated causes of action for violations of the Franchise Investment Law against Mr. Copp and Mr. Bennett. (*Southern Cal. Interveners v. SpeeDee Oil Change Systems, Inc.* (May 28, 1999, B125712) [nonpub. opn.].)

The case eventually proceeded to trial before retired Superior Court Judge Joseph R. Kalin. On April 7, 2000, Judge Kalin granted the following nonsuit motions: as to all causes of action and claims against the individual CalNeva defendants; as to the third (conspiracy) and fourth (intentional infliction of emotional distress) causes of action against CalNeva; as to the claim CalNeva violated the Franchise Investment Law; and as to all of the franchisees' causes of action against Mobil and SpeeDee Oil.

The case went to the jury on the franchisees' intentional (fraud) and negligent misrepresentation and contract breach claims against CalNeva. CalNeva's breach of contract causes of action against the franchisees were also tried at the same time. On April 4, 2000, the jury returned special verdicts finding in favor of the franchisees on their fraud cause of action. Stated differently, the jury found CalNeva committed fraud. The jury also found CalNeva had breached the local franchise agreements resulting in damages to the franchisees. But the jury further found that the franchisees had breached the local franchise agreements resulting in damages to Cal-Neva. Judgment was entered on July 12, 2000. On September 22, 2000, the trial court granted CalNeva's new trial motion.

### III. DISCUSSION

A. *The Franchisees' Appeal (Case No. B144629)*

  1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

The franchisees contend it was reversible error to grant a nonsuit in favor of CalNeva as to their Franchise Investment Law claims. We find no error. We conclude the Franchise Investment Law claims were barred by the applicable statutes of limitations.

The trial court's nonsuit order states with respect to the franchisees' Franchise Investment Law claims: "The motion is granted as to any claim that CalNeva violated the FIL. The Court finds that the acts pled as violations of the FIL (§§ 31200, 31201, 31202, 31110, 31400, as pled in the

---

*See footnote, *ante*, page 709.

Department of Corporations' complaint herein and incorporated by reference by [the franchisees]), were not knowingly made by CalNeva given the undisputed lack of authority conveyed by any officer of CalNeva to a franchise salesman or any other person to provide such information, and disclaimers to the effect that any earnings or sales information was not authorized by CalNeva (see, e.g., UFOC Item 19, Local Franchise Agreement § 11.43, Exhibit 'B'). *Alternatively,* the Court finds there was insufficient evidence that franchise salesmen were authorized by CalNeva or its officers or directors to make representations not contained in, or inconsistent with, the Local Franchise Agreement or Uniform Franchise Offering Circular, and that CalNeva's franchise salesmen did not occupy managerial positions in the company, and no representation by any salesman was ratified by any officer of CalNeva. *Alternatively,* the Court finds that the evidence established that the applicable statute of limitations, Corp. Code §§ 31303 and 31304, barred any and all claims by Plaintiffs for violation of §§ 31110, 31200, 31201, 31202 and 31301 of the FIL. [Each of the franchisees] testified that he purchased his SpeeDee franchise more than four years prior to filing suit. [Franchisees] M.G. Han and Jeff Howe testified to facts demonstrating they knew, or should have known, of the alleged FIL violations more than one year prior to filing suit. [The franchisees] presented insufficient evidence of conspiracy or concealment by CalNeva that might have tolled the running of the statutes." (Italics added.)

■ The standard of review on appeal from an order granting a nonsuit is as follows: "A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. (*Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 117-118 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].) 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor." ' (*Id.,* at p. 118.) A mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.' (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 410, p. 413, italics in original.) [¶] ■ In reviewing a grant of nonsuit, we are 'guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff.' (*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 839 [206 Cal.Rptr. 136, 686 P.2d 656].) We will not sustain the judgment ' "unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant

and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law." ' (*Ibid.*, quoting *Mason* v. *Peaslee* (1959) 173 Cal.App.2d 587, 588 [343 P.2d 805].)" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948].)

The franchisees contend that Judge Kalin's nonsuit order, which was premised in part upon the Franchise Investment Law statutes of limitations, was in error. The Franchise Investment Law statutes of limitation are found in sections 31303 and 31304. The statutes of limitations are complex. Accordingly, it is appropriate we describe them in some detail.

The first Franchise Investment Law statute of limitations, section 31303, governs, among other things, actions alleging a franchisee's reliance on misleading statements made in documents filed by the franchisor with the Commissioner of Corporations. Section 31303 states in its entirety, "No action shall be maintained to enforce any liability created under Section 31300 unless brought before the expiration of four years after the act or transaction constituting the violation, the expiration of one year after the discovery by the plaintiff of the fact constituting the violation, or 90 days after delivery to the franchisee of a written notice disclosing any violation of Section 31110 or 31200, which notice shall be approved as to form by the commissioner, whichever shall first expire." Section 31300 specifies certain circumstances in which a franchisor may be liable to a franchisee for damages under the Franchise Investment Law. Section 31300, the provision of law creating civil liability referred to in the section 31303 statute of limitations, states, "Any person who offers or sells, a franchise in violation of Section 31101, 31110, 31119, 31200, or 31202, shall be liable to the franchisee or subfranchisor, who may sue for damages caused thereby, and if such violation is willful, the franchisee may also sue for rescission, unless, in the case of a violation of Section 31200 or 31202, the defendant proves that the plaintiff knew the facts concerning the untruth or omission, or that the defendant exercised reasonable care and did not know, or, if he had exercised reasonable care, would not have known, of the untruth or omission." As can be noted, section 31303 identifies five sections which can give rise to a Franchise Investment Law violation. Section 31110[3] prohibits the offer or sale of a franchise that has not been registered with the Commissioner of Corporations and is not exempt from the registration requirement. Section

---

[3]Section 31110 states, "On and after April 15, 1971, it shall be unlawful for any person to offer or sell any franchise in this state unless the offer of the franchise has been registered under this part or exempted under Chapter 1 (commencing with Section 31100) of this part."

31101[4] exempts certain franchises from the section 31110 registration requirement provided certain written disclosures are made to prospective

[4]Section 31101 states in its entirety: "There shall be exempted from the provisions of Chapter 2 (commencing with Section 31110) of this part the offer and sale of a franchise if the franchisor complies with each of the following minimum net worth, experience, disclosure, and notice filing requirements: [¶] (a) Net worth. The franchisor and, when necessary, a corporation owning at least 80 percent of the franchisor (parent) meet one of the following net worth requirements, according to financial statements for the fiscal year just ended. The franchisor and the parent, when necessary, may rely upon the immediately preceding fiscal year's audited financial statement for 15 months from that fiscal year end date. [¶] (1) The franchisor has a net worth on a consolidated basis of not less than five million dollars ($5,000,000), according to its audited financial statement. [¶] (2) The franchisor has a net worth of not less than one million dollars ($1,000,000) and its parent has a net worth of five million dollars ($5,000,000), according to the audited financial statements of the franchisor and its parent, respectively. [¶] (3) The franchisor has a net worth of one million dollars ($1,000,000), according to its unaudited financial statement, and the parent has a net worth on a consolidated basis of not less than five million dollars ($5,000,000), according to its audited financial statement, and the parent absolutely and unconditionally guarantees to assume the duties and obligations of the franchisor under the franchise agreement should the franchisor become unable to perform its duties and obligations. [¶] (b) Experience. The franchisor or a corporation owning at least 80 percent of the franchisor (parent) complies with one or more of the following conditions throughout the five-year period immediately preceding the offer and sale of the franchise, or complies with one of the following conditions during part of the period and one or more of the following conditions during the balance of the period: [¶] (1) The franchisor has had at least 25 franchisees conducting business which is the subject of the franchise. [¶] (2) The franchisor has conducted business which is the subject of the franchise. [¶] (3) The parent has had at least 25 franchisees conducting business which is the subject of the franchise. [¶] (4) The parent has conducted business which is the subject of the franchise. [¶] (c) Disclosure. (1) Except as provided in subparagraph (2), the franchisor discloses in writing to each prospective franchisee, at least 10 business days prior to the execution by the prospective franchisee of any binding franchise or other agreement, or at least 10 business days prior to the receipt of any consideration, the following information: [¶] (A) The name of the franchisor, the name under which the franchisor is doing or intends to do business, and the name of any parent or affiliated company that will engage in business transactions with franchisees. [¶] (B) The franchisor's principal business address and the name and address of its agent in the State of California authorized to receive service of process. [¶] (C) The business form of the franchisor, whether corporate, partnership, or otherwise. [¶] (D) The business experience of the franchisor, including the length of time the franchisor (i) has conducted a business of the type to be operated by the franchisees, (ii) has granted franchises for such business, and (iii) has granted franchises in other lines of business. [¶] (E) A copy of the typical franchise contract or agreement proposed for use or in use in this state. [¶] (F) A statement of the franchise fee charged, the proposed application of the proceeds of such fee by the franchisor, and the formula by which the amount of the fee is determined if the fee is not the same in all cases. [¶] (G) A statement describing any payments or fees other than franchise fees that the franchisee or subfranchisor is required to pay to the franchisor, including royalties and payments or fees which the franchisor collects in whole or in part on behalf of a third party or parties. [¶] (H) A statement of the conditions under which the franchise agreement may be terminated or renewal refused, or repurchased at the option of the franchisor. [¶] (I) A statement as to whether, by the terms of the franchise agreement or by other device or practice, the franchisee or subfranchisor is required to purchase from the

franchisees. Section 31119[5] requires that a prospective franchisee be provided with an "offering circular" and a copy of the contract at least 10 business days prior to the execution of a written franchise agreement or receipt of any consideration. Section 31200[6] makes it unlawful for a franchisor to make "any untrue statement of a material fact in any application, notice or report" filed with the Commissioner of Corporations or to willfully omit the material fact in documents filed with the department. (See 9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 288, pp. 766-767; 34

franchisor or his or her designee services, supplies, products, fixtures, or other goods relating to the establishment or operation of the franchise business, together with a description thereof. [¶] (J) A statement as to whether, by the terms of the franchise agreement or other device or practice, the franchisee is limited in the goods or services offered by him or her to his or her customers. [¶] (K) A statement of the terms and conditions of any financing arrangements when offered directly or indirectly by the franchisor or his or her agent or affiliate. [¶] (L) A statement of any past or present practice or of any intent of the franchisor to sell, assign, or discount to a third party any note, contract, or other obligation of the franchisee or subfranchisor in whole or in part. [¶] (M) If any statement of estimated or projected franchisee earnings is used, a statement of such estimation or projection and the data upon which it is based. [¶] (N) A statement as to whether franchisees or subfranchisors receive an exclusive area or territory. [¶] (O) A copy of the financial statement or statements required by subdivision (a). [¶] (P) A copy of the unconditional guaranty, if applicable, required by paragraph (3) of subdivision (a). [¶] (2) In the case of a material modification of an existing franchise, the franchisor discloses in writing to each franchisee information concerning the specific sections of the franchise agreement proposed to be modified and such additional information as may be required by rule or order of the commissioner. Any agreement by such franchisee to such material modifications shall not be binding upon the franchisee if the franchisee, within 10 business days after the receipt of such writing identifying the material modification, notifies the franchisor in writing that the agreement to such modification is rescinded. A writing identifying the material modification is received when delivered to the franchisee. A written notice by the franchisee rescinding an agreement to a material modification is effective when delivered to the franchisor or when deposited in the mail, postage prepaid, and addressed to the franchisor in accordance with any notice provisions in the franchise agreement, or when delivered or mailed to the person designated in the franchise agreement for the receipt of notices on behalf of the franchisor. [¶] (d) Notice filing. The franchisor has filed with the commissioner a notice of exemption and paid the fee required by subdivision (f) of Section 31500 prior to an offer or sale of a franchise in this state during any calendar year in which one or more franchises are sold, excluding any material modification."

[5]Section 31119 states, "It is unlawful to sell any franchise in this state which is subject to registration under this law without first providing to the prospective franchisee, at least 10 business days prior to the execution by the prospective franchisee of any binding franchise or other agreement, or at least 10 business days prior to the receipt of any consideration, whichever occurs first, a copy of the offering circular, together with a copy of all proposed agreements relating to the sale of the franchise."

[6]Section 31200 states, "It is unlawful for any person willfully to make any untrue statement of a material fact in any application, notice or report filed with the commissioner under this law, or willfully to omit to state in any such application, notice, or report any material fact which is required to be stated therein, or fail to notify the commissioner of any material change as required by Section 31123."

Cal.Jur.3d (1998) Franchises From Private Parties, § 51.) Section 31202[7] prohibits a franchisor that is exempt from the section 31110 registration requirement from making untrue statements or omitting material facts in the disclosure document provided to a potential franchisee pursuant to section 31101, subdivision (c). (See 34 Cal.Jur.3d, *supra*, Franchises From Private Parties, § 53.) Hence, section 31303 is the statute of limitations provision for section 31300, which provides for civil liability in connection with: offering or selling an unregistered nonexempt franchise (§ 31110); failing to provide the required disclosures to a potential franchisee as required by section 31101, subdivision (c) in the case of an exempt franchise; making untrue statements in documents filed with the Commissioner of Corporations (§ 31200); making false statements in the section 31101, subdivision (c) disclosure documents provided to franchisees in the case of exempt franchises (§ 31202); and failing to provide offering circulars and franchise agreements to prospective franchisees. (§ 31119.)

The second Franchise Investment Law statute of limitations is set forth in section 31304. The Franchise Investment Law statute of limitations in section 31304 governs liability for untrue statements of material fact made to a franchisee other than those covered by section 31200. As noted previously, section 31200 involves liability for misleading statements contained in documents filed with the Commissioner of Corporations. The second Franchise Investment Law statute of limitations in section 31304 states in its entirety, "No action shall be maintained to enforce any liability created under Section 31301 unless brought before the expiration of two years after the violation upon which it is based, expiration of one year after the discovery by the plaintiff of the facts constituting such violation, or 90 days after delivery to the franchisee of a written notice disclosing any violation of Section 31201 or 31202 which notice shall be approved as to form by the commissioner, whichever shall first expire." Section 31301, which provides for civil liability under the Franchise Investment Law, states, "Any person who violates Section 31201 shall be liable to any person (not knowing or having cause to believe that such statement was false or misleading) who, while relying upon such statement shall have purchased a franchise, for damages, unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know, (or if he had exercised reasonable care would not have known) of the untruth or omission." Section 31301 provides for

---

[7]Section 31202 states in its entirety, "It is unlawful for any person willfully to make any untrue statement of a material fact in any statement required to be disclosed in writing pursuant to Section 31101, or willfully to omit to state in any such statement any material fact which is required to be stated therein."

civil liability when a franchisor violates section 31201. Section 31201 states, "It is unlawful for any person to offer or sell a franchise in this state by means of any written or oral communication not enumerated in Section 31200 which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Section 31201 provides for civil liability on the part of a franchisor for misleading statements other than those covered by section 31200. As noted previously, Section 31200 makes it unlawful for a franchisor to "make any untrue statement of a material fact in any application, notice or report" filed with the Commissioner of Corporations or willfully to omit the material fact in documents filed with the department. Therefore, liability under section 31201 involves misleading statements or failing to relate material facts to a franchisee other than those matters contained in documents filed with the Commissioner of Corporations. For example, if a franchisor salesperson orally misrepresents the profitability of a proposed franchise, then the section 31304 statute of limitations can apply because the misrepresentation was not made in a document filed with the Commissioner of Corporations. It is this type of franchisor liability for misstatements or omissions to state material facts to a franchisee that is subject to the second Franchise Investment Law statute of limitations found in section 31304.

As discussed above, the first Franchise Investment Law statute of limitations found in section 31303 involves misstatements or omissions in documents filed with the Commissioner of Corporations. Section 31303 provides for a four-year period of time in which to file suit. Further, the second Franchise Investment Law statute of limitations found in section 31304, involving misstatements or omissions of fact other than those made to the Commissioner of Corporations, allows for a two-year period of time in which to file suit. Also, under both sections 31303 and 31304, there is a one-year statute of limitations from the date of "discovery by the plaintiff of the facts constituting" a violation. Finally, as to both sections 31303 and 31304, there is a statute of limitations of 90 days after written disclosure of enumerated violations by the Commissioner of Corporations. There is no issue in this case as to the 90-day statute of limitations. There is no testimony that any of the franchisees were ever provided with a written disclosure of violations by the Commissioner of Corporations as to any claims relevant to this litigation.

According to the second amended complaint in intervention, the Almens entered into their local franchise agreement on October 5, 1989. On March 19, 1991, the Almens assigned the local franchise agreement to the Beldoon

Corporation. Mr. Anderson entered into two local franchise agreements on June 6, 1988, and again on November 11, 1988. The Beezleys entered into their local franchise agreement on January 12, 1990. The Bradleys entered into a local franchise agreement on September 19, 1989. Mr. Lau entered into his local franchise agreement on December 23, 1989. Mr. Mack signed a local franchise agreement on January 10, 1990. The Hans signed their local franchise agreement on March 29, 1991. Mr. Howe testified he entered into a local franchise agreement on March 23, 1992. On August 24, 1993, Mr. Howe assumed a second preexisting local franchise agreement for a SpeeDee Oil franchise.

The allegations of violations of the Franchise Investment Law made by all plaintiffs arise from their execution of the local franchise agreements and representations made to them prior to signing the contracts. Except for Mr. Howe and Mr. Han, all of the local franchise agreements were executed between 1988 and January 1990. As has been noted, the longest period of limitations in section 31303 is four years and in section 31304 only two years. The complaint in intervention was not filed until October 21, 1994. As to the claims of all of the franchisees, except Mr. Howe and Mr. Han, their claims for violations of section 31300 and the statutory provisions cited therein are barred by the outside four-year statute of limitations in section 31303. Further, as to the claims of all the franchisees except Mr. Howe and Mr. Han for section 31201 violations, they are all barred on their face by the section 31304 outer two-year statute of limitations. As to the claims of Mr. Howe and Mr. Han, they require further analysis and will be discussed shortly.

The franchisees contend though that their Franchise Investment Law claims did not accrue until later or were tolled premised on three theories. First, they argue that their Franchise Investment Law causes of action did not accrue until damages had been sustained. (*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 596-597 [83 Cal.Rptr. 418, 463 P.2d 770]; *City of Vista v. Robert Thomas Securities, Inc.* (2000) 84 Cal.App.4th 882, 886-887 [101 Cal.Rptr.2d 237].) Second, the franchisees argue that because of the fraudulent and oppressive conduct of the franchisors, the statute of limitations did not commence to run as long as the fraud remained concealed. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 788 [157 Cal.Rptr. 392, 598 P.2d 45] ["Just as the statute of limitations does not run against an action based on fraud so long as the fraud remains concealed, so ought the statute to be tolled even after the fraud is discovered, for so long as the sheer economic duress or undue influence embedded in the fraud continues to hold the victim in place." (Italics omitted.)]; see *DeRose*

*v. Carswell* (1987) 196 Cal.App.3d 1011, 1029 [242 Cal.Rptr. 368].) Third, the franchisees argue that the statutes of limitations were tolled because of a conspiracy among various defendants. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1126-1127 [252 Cal.Rptr. 122, 762 P.2d 46]; *Wyatt v. Union Mortgage Co., supra,* 24 Cal.3d at p. 787.)

However, these delayed discovery or tolling rules do not apply in the case of a Franchise Investment Law claim because of the express language of section 31306. This is an issue of statutory interpretation. ▮ We apply the following standard of statutory review described by our Supreme Court: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent. [Citation.]" We must interpret the statute to carry out the Legislature's intent. (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163.) Further, our Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934.) However, the literal meaning of a statute must be in accord with its purpose, as our Supreme Court noted in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute] . . . .' " In *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation] . . . ."

▮ Section 31306 provides that civil liability under the Franchise Investment Law only arises under its explicit terms. Section 31306 states in relevant part, "Except as explicitly provided in this chapter, no civil liability in favor of any private party shall arise against any person by implication

from or as a result of the violation of any provision of this law or any rule or order hereunder." Section 31306 is located in chapter 1 of part 4 of title 4 of division 5 of the Corporations Code. Chapter 1 is entitled "Civil Liability." Chapter 1 contains the provisions in the Franchise Investment Law: allowing for recovery of damages (§§ 31300-31302); specifying the statute of limitations (§§ 31303-31304); allowing for survival of actions (§ 31305); and enacting the limitation on liability in section 31306. The Legislature has not referred directly or inferentially to delayed accrual based on when damage is sustained or because of fraud nor is there any reference in sections 31303 and 31304 to tolling based upon a conspiracy. Because the delayed accrual and tolling theories of the franchisees are without merit, except for Mr. Han and Mr. Howe whose claims require further explanation, all of the franchisees' Franchise Investment Law claims are barred on their face by the four-year statute of limitations in section 31303 or the two-year time limit in section 31304.

Under similar circumstances, the California Supreme Court has noted that the Code of Civil Procedure section 340.6 statute of limitations for legal malpractice is not subject to equitable tolling. This is because the legislative history makes it clear that once an injury has been sustained, the statute of limitations commences to run. (*Laird v. Blacker* (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691] ["Section 340.6, subdivision (a), states that 'in no event' shall the prescriptive period be tolled except under those circumstances specified in the statute. Thus, the Legislature expressly intended to disallow tolling under any circumstances not enumerated in the statute"]; *Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972, 979 [83 Cal.Rptr.2d 119].) In the present case, section 31306 states, "Except as explicitly provided in this chapter, no civil liability in favor of any private party shall arise . . . ." This constitutes an express statement of unequivocal legislative intent that the statute of limitations provisions in sections 31303 and 31304 are to be the sole controlling limits on the time for filing suit under the Franchise Investment Law.

As to Mr. Han and Mr. Howe, they argue they filed suit within four years of the execution of their local franchise agreements. Hence, Mr. Han and Mr. Howe argue they are entitled to the one-year period of limitations in sections 31303 and 31304. Mr. Han alleged that misrepresentations were made concerning the profitability of a SpeeDee Oil franchise. Mr. Han and his late father signed their local franchise agreement on March 29, 1991. There is no evidence Mr. Han or his late father ever relied on any documents provided to the Commissioner of Corporations. In the absence of such reliance, no liability can arise under section 31300. Therefore, the four-year

period of limitation in section 31303 is unavailable to Mr. Han. Additionally, no liability can arise under section 31301 for other written or oral communications. Mr. Han executed his local franchise agreement on March 29, 1991. Any misrepresentations, other than those appearing in documents filed with or required to be given to a franchisee, are subject to the maximum two-year period of limitation in section 31304. The complaint in intervention was not filed until October 21, 1994. This was more than two years from the date of the last alleged misrepresentations made to Mr. Han. Accordingly, the maximum two-year statute of limitation in section 31304 had run as to Mr. Han—all of his Franchise Investment Law claims are time-barred.

Mr. Howe signed his local franchise agreement on March 23, 1992. Mr. Howe never testified he relied on any documents filed with the Commissioner of Corporations. Nor did Mr. Howe testify that he relied on any statements made concerning documents filed with the Commissioner of Corporations or the contents of the uniform franchise offering circular. In fact, Mr. Howe testified he did not look at the uniform franchise offering circular "that well" but merely that he "probably looked at it." Simply stated, Mr. Howe never relied on any documents which were provided to him or filed with the Commissioner of Corporations. Therefore, the outside four-year statute of limitations in section 31303—which governs liability premised on misleading statements in franchise documents filed with the Commissioner of Corporations or papers required by section 31101 to be provided to a franchisee—is unavailable to Mr. Howe.

The question remains whether Mr. Howe can benefit from the two-year statute of limitations in section 31304, which applies to written or oral misrepresentations made by a franchisor. Mr. Howe testified that he relied on oral statements concerning site selection made by various representatives of CalNeva. However, the representations were all made prior to the March 23, 1992, execution of his local franchise agreement. ■ As noted previously, the section 31304 two-year statute of limitations is the outer limit for claims for misleading statements made by franchisor representatives as occurred in this case. Since the complaint in intervention was not filed until October 21, 1994, more than two years after the March 23, 1992, execution of his local franchise agreement and representations which led up to its signing, all of Mr. Howe's Franchise Investment Law claims are time-barred.

■ Finally, we explain why, as a matter of statutory interpretation, the two-year and four-year periods set forth in sections 31304 and 31303 respectively impose absolute limits. We apply the standard of statutory

review described by our Supreme Court as set forth above. We conclude that under the plain language of sections 31303 and 31304, the four-year and two-year periods, respectively, are *outside limits*. Both statutes specifically state an action must be brought before the expiration of four years or two years "after the act or transaction constituting the violation" or "the expiration of one year after the discovery by the plaintiff of the fact constituting the violation . . . *whichever shall first expire*." (§§ 31303, 31304, italics added.) Once the four-year or two-year period expires, a plaintiff's belated discovery of the fact constituting the violation cannot serve to extend the statute of limitations. In other words, the four-year bar in section 31303 and the two-year limit in section 31304 are absolute. (Cf., e.g., *Lampf v. Gilbertson* (1991) 501 U.S. 350, 363 [111 S.Ct. 2773, 2782, 115 L.Ed.2d 321] [federal Securities Act of 1933, 15 U.S.C. § 77m]; *Admiralty Fund v. Hugh Johnson & Co.* (9th Cir. 1982) 677 F.2d 1301, 1308 [§ 25506]; *Malik v. Universal Resources Corp.* (S.D.Cal. 1976) 425 F.Supp. 350, 360-361 [§§ 25506, 25507].) Since Mr. Howe and Mr. Han filed their actions beyond the outside limits of the applicable statutes of limitations, we need not consider the one-year discovery alternative. Further, we need not address the question whether "discovery" as used in sections 31303 and 31304 means actual knowledge or inquiry notice. (See *Eisenbaum v. Western Energy Resources, Inc.* (1990) 218 Cal.App.3d 314, 325-326 [267 Cal.Rptr. 5] [plain language of § 25507, "discovery . . . of the facts," means actual knowledge required, not just inquiry notice]; cf. *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 875 [191 Cal.Rptr. 619, 663 P.2d 177] ["discovery" in fraud statute of limitations, Code Civ. Proc., § 338, subd. (d), means actual knowledge or inquiry notice]; *Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 948-953 [112 Cal.Rptr.2d 329] ["discovery" in context of § 12654, subd. (a), means actual knowledge or inquiry notice].) Notwithstanding the one-year discovery statutes of limitations in sections 31303 and 31304, Mr. Han's and Mr. Howe's claims for violations of the Franchise Investment Law were barred.

. . . . . . . . . . . . . . . . . . . . . . . . . . *

4.-6.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 709.

## IV. FUTURE PROCEEDINGS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V. DISPOSITION

On the appeal of plaintiffs in intervention, Donald and Belva Almen, Jon Andersen, Jerry and Kathleen Beezley, Mike and Karolyn Bradley, M.G. Han, Jeff Howe, Samuel Lau, and Christopher Mack, in case No. B144629: the order denying their motion for judgment notwithstanding the verdict is affirmed; the order denying their motion to vacate the judgment and enter a different judgment is affirmed; the order denying as moot their motion for costs and attorney's fees is affirmed; the order granting a new trial is affirmed; the request for assignment to a new trial judge is denied; the orders granting summary adjudication of Jeff Howe's and Kathleen Beezley's fraud causes of action are reversed.

On the appeal of defendant, CalNeva Oil Corporation, in case No. B144629: the order denying the motion for judgment notwithstanding the verdict is affirmed; the order denying the motion to vacate the judgment and enter a different judgment is affirmed; the sanctions request of plaintiffs in intervention is denied.

On the appeal in case No. B140743 of the plaintiffs in intervention, the nonsuit orders in favor of defendants, SpeeDee Oil Change Systems, Inc., NoCal, Inc., Gary L. Copp, Kevin Bennett, Mobil Oil Corporation, James Philpot, W. James Musser, and Richard Philpot, are affirmed. The order granting summary adjudication of the fraud cause of action in favor of James Philpot, W. James Musser, and Richard Philpot is affirmed.

Defendants, CalNeva Oil Corporation, James Philpot, W. James Musser, Richard Philpot, SpeeDee Oil Change Systems, Inc., NoCal, Inc., Gary L. Copp, Kevin Bennett, and Mobil Oil Corporation, are to recover their costs on appeal, jointly and severally, from the plaintiffs in intervention, except that Jeff Howe and Kathleen Beezley are to recover their costs on appeal in case No. B144629 from defendant CalNeva Oil Corporation.

Grignon, J., concurred.

---

*See footnote, *ante*, page 709.

A petition for a rehearing was denied February 19, 2002, and on February 1, 2002, and February 8, 2002, the opinion was modified to read as printed above. The petition of interveners and appellants for review by the Supreme Court was denied April 17, 2002.