Filed 4/15/14  Sayre v. Sayre CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STEPHEN C. SAYRE, | B246668 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC116834) |
| v. | |
| COTTER SAYRE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cesar C. Sarmiento, Judge.  Affirmed.

Stephen C. Sayre, in pro. per., for Plaintiff and Appellant.

Fuller & Fuller, Bruce P. Fuller and Christine M. Allen for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiff Stephen C. Sayre appeals from a judgment of dismissal entered in favor of defendants Cotter Sayre and Linda Sayre after the trial court sustained defendants' demurrer without leave to amend. The trial court ruled that the sole cause of action for fraud was barred by the statute of limitations. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

A.    *Janice Sayre and Her Children*

Janice Sayre had four children, plaintiff Stephen C. Sayre, Chauncey Sayre, Garrett Sayre, and defendant Cotter Sayre. Defendant Linda Sayre was Cotter Sayre's wife.[2] Cotter had power of attorney over Janice's finances and healthcare.

On September 14, 2005 Janice was hospitalized. She soon contracted pneumonia and fell into a coma. Cotter directed the medical staff not to allow anyone else in the family to have access to Janice's medical records or to obtain information about her treatment. Cotter did not visit Janice in the hospital and apparently had no interest in pursuing any treatment that might extend or increase the quality of Janice's life. He also transferred Janice's assets to his name while Janice was in the hospital.

Cotter's three brothers decided that they needed to replace Cotter as Janice's healthcare decisionmaker. Cotter, however, refused to provide them any healthcare or

---

[1]    "On appeal after the superior court has sustained a demurrer [and dismissed the action], we assume as true all facts alleged in the complaint." (*Sheehan v. San Francisco 49ers, Ltd.* (2009) 45 Cal.4th 992, 996; see *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751.)

[2]    Because the parties "share the same last name, we refer to them by their first names for convenience and clarity" (*Jones v. ConocoPhillips Co.* (2011) 198 Cal.App.4th 1187, 1191, fn. 1) and "not out of disrespect" (*Cruz v. Superior Court* (2004) 120 Cal.App.4th 175, 188, fn. 13; see *Farmers New World Life Ins. Co. v. Rees* (2013) 219 Cal.App.4th 307, 310, fn. 1).

trust documents. Cotter, without consulting his brothers, eventually told Janice's doctors to "pull the plug" and allow her to die.

Janice died on October 11, 2005. Cotter became the executor of Janice's estate and the trustee of her trust.

### B. *The Probate Court Proceedings*

In January 2007 Cotter, as successor trustee of Janice's trust, filed a petition for approval of his first and final accounting and for an order approving preliminary distribution of the trust assets. Cotter served the petition on Garrett, Chauncey, and counsel for Stephen, who was authorized to accept service. Cotter also served counsel for Stephen with notice of the April 6, 2007 hearing on approval of the petition. The petition disclosed that, after the sale of a residence in Woodland Hills, the trust had $521,517.55 in a bank account, and that Cotter intended to distribute $165,975.32 to himself and $85,650.21 to Garrett, and keep $200,000 in reserve.[3] The accounting also showed that the trust had made various advances during Cotter's administration of the trust, including payments and reimbursement to the mortuary, the trustee's attorneys, Cotter, and Garrett. The accounting did not make any mention of any past or future distributions of trust assets to Stephen.

### C. *This Action*

Five years later, on April 26, 2012, Stephen filed this action against Cotter and Linda. Cotter and Linda demurred. The trial court sustained the demurrer to the first cause of action for fraud with leave to amend and sustained the demurrer to the second cause of action for violation of various Probate and Civil Code sections without leave to amend.

---

[3] The petition also requested reimbursement to the trustee in the sum of $44,891.74 and confirmed the prior distribution of $25,000 to Garrett. The record does not disclose whether, when, and to whom Cotter ultimately distributed the $200,000 reserve.

3

Stephen filed a first amended complaint asserting one cause of action for fraud. He alleged in his amended complaint that "while cajoling Plaintiff into a false sense of security" by insisting they were acting "legally and in the best interest of Plaintiff and all other parties involved," Cotter and Linda "conspired to illegally acquire monies and property that belonged to Janice . . . before her passing away on 10-11-05—as well as to fraudulently coerce her to give Cotter both the control of the estate, the majority of her funds (including all her bank accounts), property, and control of her healthcare." Stephen alleged that Cotter used the control of Janice's healthcare "in order to cause his mother's premature demise." Stephen also alleged that the information had "just recently come to [his] attention over the past several months: (1) throughout the years [Cotter and Linda] repeatedly made false and derogatory representations to Janice . . . in regard to her other three sons in an attempt to alienate them from her for their financial gain; (2) [Cotter] coerced Janice . . . to sign all her bank accounts into his name beginning in 2002 up until only a matter of months before her demise (the same was done with any other property [Cotter and Linda] could access—such as jewelry, valuable artwork, vehicles, etc.); (3) [Cotter and Linda] convinced Janice . . . to remove healthcare authority from Chauncey . . . in order to be able to more fully control Janice's activities in a way that would benefit them financially and; (4) [Cotter and Linda] did all the above while telling [Stephen] that they were acting legally and in the best interest of [Stephen] and all the other members of his family." Stephen further alleged that "[i]t was impossible for [Stephen] to have uncovered the above described deceitful activities until he was just recently informed, during the first several months of 2012, that these activities actually took place. Proceeding [*sic*] this time, [Stephen] was only aware of [Cotter and Linda]'s callous disregard for Janice['s] healthcare." Stephen requested a judgment that ordered Cotter and Linda to preserve and allow him access to Janice's banking and estate documents. He also asked for an order giving him 25 percent of Janice's "original estate."

Cotter and Linda demurred again. They argued, among other things, that the action was barred by the three-year statute of limitations for fraud (Code Civ. Proc., § 338, subd. (d)) because the allegations of Stephen's original complaint, some of which

4

he had omitted from his amended complaint, showed he had actual or constructive knowledge of his claims in 2005 but did not file this action until 2012.

On November 30, 2012 the trial court sustained the demurrer without leave to amend. The court stated that "the original complaint contained numerous allegations relating to conduct that occurred prior to 2005 of which [Stephen] was contemporaneously aware." The court found that, under *Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, Stephen could not simply omit the prior admissions in his original complaint that showed the statute of limitations barred his claim without providing an explanation for the omission. (*Id.* at pp. 1044-1045.) The court found that Stephen had not provided any such explanation. The trial court also noted that Stephen had not pleaded the time and manner of his discovery of the facts he claimed he did not discover until "the first several months of 2012," nor had he pleaded why he had been unable to discover these facts earlier despite reasonable diligence, as required by *Fox v. Ethicon Endo-Surgery, Inc*. (2005) 35 Cal.4th 797, 807-808.

On December 7, 2012 Cotter and Linda gave notice of the entry of the trial court's November 30, 2012 order. On January 24, 2013 Stephen filed a notice of appeal. On May 7, 2013 the trial court filed a judgment of dismissal.[4]

---

**4** Although Stephen's "notice of appeal was premature because an order sustaining a demurrer without leave to amend is not appealable," "[i]n the interests of justice and absent any prejudice to [defendants] . . . , we construe the appeal from the order sustaining the demurrer as taken from the [judgment] of dismissal later filed." (*Vitkievicz v. Valverde* (2012) 202 Cal.App.4th 1306, 1310, fn. 2; see *Vibert v. Berger* (1966) 64 Cal.2d 65, 67-69 [purported appeal from order sustaining demurrer without leave to amend treated as an appeal from subsequent judgment of dismissal]; see also Cal. Rules of Court, rule 8.100(a)(2) ["notice of appeal must be liberally construed"].)

## DISCUSSION

A.      *Standard of Review*

When reviewing a judgment dismissing an action after an order sustaining a demurrer without leave to amend, we review the complaint de novo "to determine whether the complaint alleges facts sufficient to state a cause of action on any legal theory.  [Citation.]"  (*Akopyan v. Wells Fargo Home Mortgage, Inc.* (2013) 215 Cal.App.4th 120, 130-131.)  "We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense.  [Citations.]"  (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558; *Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1250.)  When a demurrer is sustained without leave to amend, "'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse.  [Citation.]'  [Citation.]"  (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 61; see *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1387, fn. 16.)  The plaintiff has the burden of showing that "'there is a reasonable possibility the defect in the pleading can be cured by amendment'" and "'''in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. . . .'  [Citation.]"  [Citation.]'  [Citations.]"  (*Bergeron v. Boyd* (2014) 223 Cal.App.4th 877, 890, petn. for review pending, petn. filed Mar. 17, 2014.)

B.      *The Trial Court Properly Sustained the Demurrer on the Ground the Statute of Limitations Barred This Action*

"A complaint disclosing on its face that the limitations period has expired in connection with one or more counts is subject to demurrer. . . .  If a demurrer demonstrates that a pleading is untimely on its face, it becomes the plaintiff's burden 'even at the pleading stage' to establish an exception to the limitations period.  [Citation.]"  (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 962.)

6

Stephen's complaint is based on events that occurred during and prior to 2005. He filed this action in 2012. The statute of limitations for fraud is three years. (Code Civ. Proc., § 338, subd. (d)[5]); *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1122-1123.) Because Stephen filed this action more than three years after 2005, he relies on the discovery rule, "which delays accrual of a cause of action until a party discovers or has reason to discover the cause of action." (*Fuller v. First Franklin Financial Corp.*, *supra*, 216 Cal.App.4th at p. 962.) Stephen argues that the trial court erred in ruling that his claim was barred by the statute of limitations because he "could not have discovered Defendants' . . . acts of deceit [before] 2012" and that "the statute of limitations should be tolled under these circumstances . . . ."

"A cause of action accrues, and the limitations period begins to run, when "'the cause of action is complete with all of its elements.'" [Citation.] Under certain circumstances, however, the accrual of the action may be postponed and the running of the limitations period tolled 'until the plaintiff discovers, or has reason to discover, the cause of action. [Citations.] [¶] A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period.' [Citations.]" (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 960; see *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 ["[t]he limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues," i.e., "'"when [it] is complete with all of its elements"— those elements being wrongdoing, harm, and causation'"].)

---

**5** Code of Civil Procedure section 338, subdivision (d), states: "Within three years: [¶] . . . [¶] (d) An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

The discovery rule applies to fraud claims. (Code Civ. Proc., § 338, subd. (d); *Cansino v. Bank of America* (Mar. 26, 2014, H038714) ___ Cal.App.4th ___ [2014 WL 1229660, p. 6].) "Because the discovery rule operates as an exception to the statute of limitations, 'if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint.' [Citation.]" (*Cansino*, *supra*, ___ Cal.App.4th ___ [2014 WL 1229660, p. 6].) Rather than taking "a hypertechnical approach to the application of the discovery rule . . . we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 807.) Having such a suspicion, a potential plaintiff "must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." (*Id.* at pp. 808-809; see *Doe v. Roman Catholic Bishop of Sacramento* (2010) 189 Cal.App.4th 1423, 1433 ["""[d]iscovery is different from knowledge, [so] that where a party defrauded has received information of facts which should put him upon inquiry, and the inquiry if made would disclose the fraud, he will be charged with a discovery as of the time the inquiry would have given him knowledge"""], quoting *Vai v. Bank of America* (1961) 56 Cal.2d 329, 343.) Thus, the "date a complaining party learns, or at least is put on notice, that a representation was false is the date the statute starts running. [Citation.]" (*Prakashpalan v. Engstrom, Lipscomb & Lack*, *supra*, 223 Cal.App.4th at p. 1123.)[6]

---

[6] This "rule strikes the proper balance between the competing purposes inherent in the limitation period: In order to promote resolution of claims on the merits, inquiry notice protects fraud victims from having the limitations period run before they are even aware of the fraud; however, it also avoids the undue delay and opportunistic behavior that would tend to result from a rule that required awareness of every fact necessary for a fraud claim. [Citation.]" (*State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 416.)

"To excuse failure to discover the fraud within three years after its commission, a plaintiff also must plead 'facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.' [Citations]. To that end, a plaintiff must allege facts showing 'the time and surrounding circumstances of the discovery and what the discovery was.' [Citation.] Conclusory allegations will not withstand a demurrer. [Citation.] The discovery related facts should be pleaded in detail to allow the court to determine whether the fraud should have been discovered sooner. [Citation.]" (*Cansino v. Bank of America*, *supra*, ___ Cal.App.4th ___ [2014 WL 1229660, p. 6]; see *Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 808 [if a plaintiff desires "to rely on the discovery rule for delayed accrual of a cause of action," the plaintiff "'must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence'"].)

The allegations in Stephen's original complaint show that he had knowledge, constructive and probably actual, of the allegedly wrongful acts by Cotter and Linda beginning in 2002, well before Janice died in 2005. Stephen alleged that the wrongful conduct of Cotter and Linda included "a series of criminal and civil violations over a period of approximately 15 years," and that in 2002 Cotter and Linda initiated their plan to "coerce [Janice] to give Cotter both the control of the estate, the majority of her funds (including all her bank accounts), property, and control of her healthcare . . . in order to cause his mother's premature demise."

Stephen further alleged that by 2005 Janice was suffering from dementia and Alzheimer's disease. Stephen alleged that Cotter rarely visited Janice except "to pick up a valuable piece of [her] property such as her car, jewelry, contents of her safe deposit boxes, or the signing over of the control of her bank accounts . . . ." Cotter allegedly threatened Janice "with sending her to a nursing home if she did not acquiesce to his demands." According to Stephen, "Cotter had arranged to have all of Janice's bank accounts and safe deposit boxes transferred into his name. In addition, Cotter clearly

9

stated that he fully intended on keeping all these cash assets and not spending them on Janice's care . . . ."

Stephen also alleged that he had discussions with his mother in 2005 about the control Cotter was exercising over her assets and Cotter's general misconduct, and that when he "would ask Janice why she submitted to Cotters demands, of which she often complained during the last three months of her life . . . ," she responded that she did not want to make Cotter angry. Stephen alleged that when he asked Cotter about Janice's estate and healthcare, "Cotter would often respond with abusive language or threats."

These allegations show that by 2005 Stephen had constructive knowledge, if not actual knowledge, of the facts on which his fraud claim is based. (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (2002) 95 Cal.App.4th 709, 727 ["'discovery' in fraud statute of limitations, Code Civ. Proc., § 338, subd. (d), means actual knowledge or inquiry notice"], citing *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 875.) If there were any minor details about Cotter's allegedly wrongful conduct about which Stephen may have not known, Stephen had more than enough information and suspicion in 2005 to trigger his duty to investigate further. (See *Miller v. Bechtel*, *supra*, at p. 875 ["if [the plaintiff] became aware of facts which would make a reasonably prudent person suspicious, [the plaintiff] had a duty to investigate further, and [the plaintiff] was charged with knowledge of matters which would have been revealed by such an investigation"]; *Doe v. Roman Catholic Bishop of Sacramento*, *supra*, 189 Cal.App.4th at p. 1430 [the "discovery element has been interpreted to mean 'the discovery by the aggrieved party of the fraud *or* facts that would lead a reasonably prudent person to *suspect* fraud"].)

Moreover, the petition for approval of trust account and preliminary distribution Cotter filed in January 2007 and set for hearing in April 2007 gave Stephen further notice that Cotter was the trustee, was controlling and distributing assets from the trust, and was not distributing anything to Stephen. This knowledge was particularly significant for purposes of putting Stephen on inquiry notice of the claim in this case because in his prayer for relief in this action Stephen asks for a one-fourth share of Janice's estate.

10

Stephen knew in 2007, or at least knew enough to require him to inquire further or even object to the petition, that he was not going to receive a one-fourth share of Janice's estate. Therefore, by 2007 (five years before he filed this action), if not by 2005 (seven years before he filed this action), Stephen, at a minimum, was put on additional inquiry notice of his fraud claim against Cotter and Linda.

Stephen argues that the allegations showing that he had knowledge and suspicions of Cotter and Linda's activities by 2005 were "stated in the complaint as background information and as character references regarding the two defendants [and] are not the actions [he] is presenting to the court for litigation." These allegations, however, show knowledge, and the trial court properly relied on them in sustaining the demurrer, even though Stephen omitted them from his first amended complaint. "[W]hen a complaint contains allegations that are fatal to a cause of action, a plaintiff cannot avoid those defects simply by filing an amended complaint that omits the problematic facts or pleads facts inconsistent with those alleged earlier. [Citations.] Absent an explanation for the inconsistency, a court will read the original defect into the amended complaint, rendering it vulnerable to demurrer again. [Citations.]" (*Banis Restaurant Design, Inc. v. Serrano*, *supra*, 134 Cal.App.4th at p. 1044; see *Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 751 ["allegations in an original pleading that rendered it vulnerable to demurrer or other attack cannot simply be omitted without explanation"]; *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425 ["plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers"].) Stephen did not plead any facts explaining the reason for the inconsistencies between his original complaint and his first amended complaint, or explaining why, other than to avoid the statute of limitations, he failed to include in his amended complaint the allegations showing his knowledge of events in 2005.

Stephen did allege in his first amended complaint that the fraudulent acts of Cotter and Linda had "just recently come to [his] attention over the past several months" and that "[i]t was impossible for [him] to have uncovered the above described deceitful activities until he was just recently informed, during the first several months of 2012, that

11

these activities actually took place."  Stephen, however, did not allege specific facts in detail showing "'(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'"  (*Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 808; *Cansino v. Bank of America*, *supra*, ___ Cal.App.4th ___ [2014 WL 1229660, p. 6].)  Stephen's conclusory allegations were insufficient to excuse his failure to discover his fraud claim within three years.

Finally, Stephen had an opportunity to allege discovery sufficiently but failed to do so, even after the trial court "admonished [Stephen] that, should he choose to amend his complaint to avoid a statute of limitations bar, he must comply with case law regarding delayed discovery," advised Stephen that he had to plead "the time and manner of discovery of the subject facts and the inability to have made earlier discovery despite reasonable diligence," and cited Stephen to *Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 808.  Stephen alleged that he could not have discovered the "deceitful activities" by Cotter and Linda prior to 2012, but he did not allege how he made this discovery and why he could not have made the discovery sooner.  Nor does Stephen on appeal say how he would amend to allege such facts.  In light of the facts Stephen alleged in his original complaint regarding how much knowledge he had in 2005 and 2007, we can see no reasonable possibility that he could amend to invoke the discovery rule.  (See *Sandler v. Sanchez* (2012) 206 Cal.App.4th 1431, 1437 ["'[l]eave to amend should *not* be granted where . . . amendment would be futile'"].)  The trial court did not abuse its discretion in denying leave to amend.  (See *Bergeron v. Boyd*, *supra*, 223 Cal.App.4th at p. 890 ["[h]aving failed to carry [his] burden to make a showing how the complaint might be amended to avoid the defenses raised by [the defendant], we must conclude there was no error in sustaining the demurrer without leave to amend"]; *Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 458 ["'[w]here the appellant offers no allegations to support the possibility of amendment . . . there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend'"].)

## DISPOSITION

The judgment is affirmed.  Cotter Sayre and Linda Sayre are to recover their costs on appeal.

SEGAL, J.[*]

We concur:

WOODS, Acting P. J.

ZELON, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.