**SAMICA ENTERPRISES, LLC, et al., Plaintiffs,**

v.

**MAIL BOXES ETC. USA, INC., et al., Defendants.**

**Case No. CV 06–2800 ODW (CT).**

United States District Court, C.D. California, Western Division.

Dec. 22, 2008.

715

Jonathan Weiss, Jonathan Weiss Law
Offices, Los Angeles, CA, L. Michael
Hankes, L. Michaelk Hankes Law Offices,
Boston, MA, Peter C. Lagarias, Robert S.
Boulter, Lagarias and Boulter, San Rafael,
CA, for Plaintiffs.

Gregory B. Koltun, Jane H. Barrett,
Lawrence R. Katzin, Mark R. McDonald,
Saro H. Balian, Morrison and Foerster
LLP, Los Angeles, CA, Paul T. Friedman,
Morrison & Foerster, San Francisco, CA,
Steven M. Kaufmann, Morrison and Foer-
ster, Denver, CO, Peter C. Lagarias, La-
garias and Boulter, San Rafael, CA, for
Defendants.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [126, 131]

OTIS D. WRIGHT II, District Judge.

## I. INTRODUCTION

On May 9, 2006, over two hundred fran-
chisees, principals and guarantors of "The
UPS Store" filed this action against vari-
ous Mail Boxes Etc., Inc. ("MBE") and
United Parcel Service, Inc. entities
("UPS"). Plaintiffs allege they were
duped into investing in The UPS Store
franchises, which are (allegedly) economi-
cally unviable. On October 29, 2007, the
court directed each side to select for trial
two "Phase I Plaintiffs" (*i.e.*, those who
invested in The UPS Store directly) and
two Phase II Plaintiffs (those who convert-
ed from Mail Boxes Etc.). The Phase I
Plaintiffs are "Rayment," Center 4605, and
"Thomas," Center 5281 (selected by Plain-
tiffs), and "Archambault," Center 4942,
and "Roat," Center 5145 (selected by De-
fendants).[1]

1. The Phase II Plaintiffs are the subject of a separate motion for summary judgment, dis- cussed below.

Mail Boxes Etc., Inc and United Parcel Service, Inc (DE, NY, and OH) (collectively, "Defendants") now move for summary judgment or, in the alternative, partial summary judgment against the Phase I Plaintiffs. Defendants argue there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law on Plaintiffs' (1) Second Claim for breach of contract; (2) Fourth Claim for fraud by omission; (3) Sixth Claim for fraud, deceit, and negligent misrepresentation; (4) Eighth Claim for violation of the California Franchise Investment Law ("CFIL"); (5) Tenth Claim for violation of California Business & Professions Code Section 17200, *et seq.* and 17500, *et seq;* (6) Eleventh Claim for violation of non-California franchise and consumer protection statutes; (7) Thirteenth Claim for declaratory relief; and (8) Fourteenth Claim for rescission.

## II. FACTS

In 2001, MBE, a wholly-owned subsidiary of UPS, became the franchisor of Mail Boxes Etc. centers. (UF 13.) MBE subsequently offered "The UPS Store" franchises to existing MBE franchisees through a "Gold Shield Amendment" to their existing franchise agreements, and to new franchisees through new franchise agreements. (UF 14.) The Phase I Plaintiffs received Franchise Offering Circulars ("FOCs") and entered into Franchise Agreements ("FAs") with MBE for The UPS Store. (UF 1–12.) Each Plaintiff also entered into a "Contract Carrier Agreement" ("Carrier Agreement") with UPS for UPS shipping services. (UF 2–11.)

The relevant contracts contain various provisions which underlie Plaintiffs' several claims. Pursuant to the "best efforts" provision in the FA, for example, "MBE agree[d] to use best efforts to ensure that its affiliate [UPS] gives Franchisee discounts and incentives on Franchisee's wholesale cost of UPS services." (Joint Stip., ¶¶ 8, 9, Exhs. H, I.) MBE sought and procured "incentives off the retail rate," but it is disputed whether any of the incentives went to the "wholesale cost." (UF 15.)

This provision interplays with another in the Carrier Agreement, which obligates Plaintiffs to accept UPS drop-off packages and prohibits them from "charg[ing] their customers more than the maximum price set by UPS for UPS shipping services." (UF 27.) That agreement also set forth the incentives that UPS would give Plaintiffs and disclosed that "UPS may, in its sole and absolute discretion, modify ... the wholesale discounts and incentives provided to Participating Franchisee's The UPS Store." (UF 28; Jt. Stip., Ex. G at § 13.B.) Other provisions and facts, including Plaintiffs' fraud allegations, will be discussed as necessary.

## III. LEGAL STANDARD

Rule 56 requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1263 (9th Cir.1997). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden is met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 323–34, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer,* 198 F.3d 1130, 1134 (9th Cir.2000). Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party—over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

## IV. DISCUSSION

### *Phase I*

#### 1. *Second Claim: Breach of Contract and Good Faith*

Defendants argue they did not breach their contracts by (1) "failing to use their best efforts to secure from UPS adequate discounts," (2) "failing to provide reasonable consultation and advice regarding operation of the center[s]," or (3) otherwise failing to fulfill certain alleged obligations. (4th Compl. ¶¶ 96, 97.)

*Best Efforts Provision—against MBE*

The provision at issue is found in the Franchise Agreements. It reads: "In reliance on Franchisee's commitment to comply with the designated maximum prices, MBE agrees to use best efforts to ensure that its affiliate [UPS] gives Franchisee discounts and incentives on Franchisee's wholesale cost of UPS services." (Joint Stip., ¶¶ 8, 9, Exhs. H, I, Para. 7. 1b.) This provision is not defined in the rele-

vant contracts, and the parties construe it differently.

■ Before turning to the parties' arguments, it bears noting that a "best efforts" provision "requires a party to make such efforts as are reasonable in [ ] light of that party's ability and the means at its disposal and of the other party's justifiable expectations...." 2 Farnsworth on Contracts § 7.17 at 350 (2d ed. 1998); *see also* Farnsworth, On Trying to Keep One's Promises: The Duty of Best Efforts In Contract Law, 46 U. Pitt. L.Rev. 1, 8 (1984) ("Courts [and Plaintiffs] sometimes confuse the standard of best efforts with that of good faith.... Good faith is a standard that has honesty and fairness at its core and that is imposed on every party to a contract. Best efforts is a standard that has diligence as its essence and is imposed only on those contracting parties that have undertaken such performance. The two standards are distinct and that of best efforts is the more exacting").

■ Whether a defendant used best efforts under the circumstances is a factual question usually reserved for the jury. *U.S. Ecology, Inc. v. State of California,* 92 Cal.App.4th 113, 136, 111 Cal.Rptr.2d 689 (2001). Defendants may still prevail on this motion, however, if the relevant facts are undisputed and conclusive or "there is an absence of evidence to support [Plaintiffs'] case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. To that end, the following facts are uncontroverted: (1) MBE had several discussions with UPS about improving "incentives, pricing, and retail rates;" (2) MBE made "numerous requests to UPS to increase margins and incentives;" and (3) MBE suggested that UPS simplify the rate structure, providing for "incentives [on the] retail rate." (UF 16, 17, 20.) As a result of such efforts, and others, MBE was able to obtain for Plaintiffs the best discounts and incentives of any UPS authorized shipping store. (UF 23.)[2]

**2.** Plaintiffs purport to dispute "in part" some of these facts but do not in fact do so. Rath-

While these facts show that MBE undertook some effort, the question remains: "How hard must one try if one has undertaken to use best efforts?" Farnsworth, 46 U. Pitt. L.Rev. 1, 1. As mentioned above, the answer depends on the terms (and nature) of the agreement, Defendants' ability, and Plaintiffs' justifiable expectations. These factors cut decisively in Defendants' favor. Critically, UPS reserved for "its sole and absolute discretion" the right to "modify" Plaintiffs' incentives. This provision, to which Plaintiffs assented, not only limits MBE's ability to obtain incentives, but it also tempers Plaintiffs' justifiable expectations. Coupled with Defendants' undisputed efforts (and the results obtained), the court cannot but conclude that Defendants fulfilled their obligation. (*See also* Mot. at 3–5.)

█ Alternatively, Plaintiffs may not maintain a breach of contract claim based on the "best efforts" provision because they have not raised a genuine issue that UPS would have acted any differently had Defendants exerted greater effort. *See Nat'l Data Payment Sys., Inc. v. Meridian Bank*, 212 F.3d 849, 854 (3rd Cir.2000) ("Even if [defendant's] actions constituted a default of its best-efforts obligation, [plaintiff] has provided absolutely no evidence that, had [defendant's] behavior been any different, [the desired result would have been obtained]"); *see also* Cal. Civ Code § 3301. Here, it is undisputed that UPS retained absolute discretion to modify the incentives, and Plaintiffs offer no evidence that UPS would have extended greater incentives had Defendants not allegedly breached their obligation. (*See* UF 25.) Accordingly, Defendants' motion for summary adjudication as to this provision is GRANTED.

### Consultation and Advice Provision— against MBE

Defendants argue Plaintiffs may not maintain a claim for breach of contract based on their alleged failure to provide "reasonable continuing consultation and advice regarding operation of the Center[s]." (Joint Stip., Exhs. H, I at tab FOC–1) The court agrees. Defendants argued in their moving papers that this obligation is triggered by a "Franchisee's written request" for advice, *see id.*, and that "Plaintiffs have no evidence they made any such requests." (Mot. at 6.) Plaintiffs' Opposition does not address this argument or otherwise raise a genuine issue for trial. Accordingly, Defendants' motion as to this provision is also GRANTED.

### Breach of Other Provisions— against MBE

█ Defendants argue Plaintiffs cannot base their breach of contract claim on various representations found in the Risk Factors Acknowledgments ("RFAs"). (Mot. at 7–8.) This argument goes to Plaintiffs' contention that MBE allegedly failed to provide a system where "the success or failure of [the] business will depend primarily on [Plaintiffs'] efforts." (4th Compl. ¶ 96 b.)

Defendants argued in their moving papers that the RFAs are extracontractual

---

er, Plaintiffs read several unfounded obligations into the best efforts provision, conflate the relevant inquiry with good faith, and offer otherwise unavailing arguments. (*See* UF 16–25.) For example, Plaintiffs contend Defendants sought and obtained incentives on the retail rate only, not the "wholesale cost"—as stated in the FA. They then argue, because "there is no such thing as 'wholesale cost',"

Defendants must necessarily have breached their contracts. (Opp'n at 4.) Not so. If there is no such thing as "wholesale cost," then either Defendants' performance is excused as impossible, Defendants are liable for fraud, or the parties made a mistake. Under none of these scenarios, importantly, can Defendants be liable for breach of contract.

and, alternatively, that the representations contained therein do not support a claim for breach of contract. *See, e.g., Traumann v. Southland Corp.*, 858 F.Supp. 979, 982 (N.D.Cal.1994) ("A claim for breach of contract [ ] must be based on the nonperformance of express promises or legal duties contained in a contract.") (*citing* 4 A. Corbin, *Corbin on Contracts*, § 943 at 807, n. 1 (1951)). In their Opposition, Plaintiffs merely argued that the documents are indeed part of the contracts, (Opp'n at 5–7), but they nowhere addressed Defendants' argument that the RFAs do not impose on Defendants the kinds of obligations which give rise to a beach of contract claim. A cursory review of the RFAs confirms that they serve to *limit* Defendants' undertaking (and attendant liability), not expand it.

The Risk Factors Acknowledgments that Plaintiffs signed provide, among other things: "You [Plaintiffs] hereby acknowledge that you understand [ ] the success or failure of your business will depend primarily on your local marketing efforts" and "MBE CANNOT GUARANTEE THAT YOUR BUSINESS WILL EVER ACHIEVE PROFITABILITY." (Joint Stip. ¶ 8, Exh. H at FOC 11.) Such acknowledgments by Plaintiffs cannot be perversely read as imposing on MBE a duty "to ensure that each franchisee's success [will in fact depend] on their local marketing efforts." (Reply at 5.)[3] Thus, Defendants motion as to these representations is GRANTED.

### Solicitation of The UPS Store Customers— against MBE

Defendants argued in their moving papers that they did not breach their contracts by soliciting Plaintiffs' customers, pointing out that MBE retained the right to contact those customers. (*See* Mot. at 8.) Plaintiffs did not address this argument in their Opposition or otherwise raise a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. Defendants' motion as to this argument is therefore GRANTED.

### Implied Covenant of Good Faith

■ Defendants argue that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is preempted by federal law because it relates to the allegedly unreasonable prices charged by UPS. (*See* Mot. at 8) ("Through the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), Congress has expressly barred the 'enact[ment] or enforce[ment]' of any state law 'related to a price, route, or service' of motor and air carriers of property, such as UPS.") (*quoting* 49 U.S.C. §§ 14501(c)(1) and 41713(b)(4)(A)). The court agrees; Plaintiffs' claim relates to UPS prices and involves the enforcement of state law.

First, Plaintiffs contend "the discounts [ ] UPS pays Plaintiffs on shipping have nothing to do with its prices and cannot be preempted by the FAAAA." (Opp'n at 9.) This untenable assertion is belied by Plaintiffs' operative complaint, which directly attacks the reasonableness of the "maximum prices franchisees can charge [UPS] customers," the "prices paid to franchisees for drop-offs," and UPS's "discounts and incentives." (4th Compl. ¶ 97.) Clearly, Plaintiffs' claim is sufficiently "related to price," and is subject to preemption. 49 U.S.C. § 14501(c)(1).

Second, Plaintiffs argue their claim is not preempted because it alleges no violation of state-imposed obligations, but seeks recovery solely for UPS's alleged breach of

---

**3.** As discussed below, this language also negates Plaintiffs' reliance on alleged misstatements in the RFAs.

its own, self-imposed undertakings. (Opp'n at 8–9) (citing *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232–33, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995)) ("[Preemption clause] stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, *with no enlargement or enhancement based on state laws or policies external to the agreement.*") (emphasis added).

Here, the Carrier Agreement between Plaintiffs and UPS required Plaintiffs to comply with UPS's designated maximum prices. That agreement also gave UPS the discretion to modify those prices as well as the incentives which Plaintiffs may receive. (UF 25–29.) UPS never undertook to provide "reasonable" prices nor did the parties bargain for such a provision. Rather, as the very nature of Plaintiffs' good faith claim suggests, such requirements are forbidden enhancements of UPS's contractual obligations, as implied under California law. *See, e.g., Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 91, 44 Cal.Rptr.2d 420, 900 P.2d 669 (1995) ("[I]n California, the law implies in every contract a covenant of good faith and fair dealing."); *see also Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995) (the covenant is extracontractual; it "is implied as a supplement to the express contractual covenants.").

As one California court succinctly explained: "Conditions implied by law are conditions imposed by law—state law; they are not negotiated by the contracting parties. Claims based on violation of the covenant [of good faith] are therefore preempted." *Power Standards Lab, Inc. v. Fed. Exp. Corp.*, 127 Cal.App.4th 1039, 1046, 26 Cal.Rptr.3d 202 (2005); *see also Hanni v. Am. Airlines, Inc.*, 2008 WL 1885794, *7 (N.D.Cal.2008) ("Plaintiff's breach of contract claim is preempted to the extent it is based on a breach of the implied covenant of good faith and fair dealing."). Accordingly, because all bases for breach of contract fail, Defendants' motion is GRANTED.[4]

### 2. Fourth and Sixth Claims: Fraud By Omission and Negligent Misrepresentation

Defendants argue "[t]he representations and omissions Plaintiffs contend are fraudulent or negligent misrepresentations are barred by the California Franchise Investment Law ("CFIL"), Cal. Corp.Code §§ 31100, *et seq.*, not false representations of fact, and/or not the type of representation[s] or omission[s] on which Plaintiffs could justifiably rely." (Mot. at 10.) The

---

**4.** Plaintiffs' reliance on *Air Trans. Ass'n of Am. v. City and County of San Francisco* is unavailing. 266 F.3d 1064, 1071 (9th Cir. 2001) ("If a state law's effect on price, route or service is too tenuous, remote, or peripheral, then the state law is not preempted.") (internal quotation marks and citation omitted). That court upheld a state-imposed "requirement that airlines not discriminate in providing benefits [because the law] ha[d] no forbidden connection with prices and services." *Id.* at 1072. The court reasoned: "The Airlines are free to set whatever terms, conditions and prices they want on the travel benefits and discounts they do decide to provide, as long as they do not discriminate."

Here, by contrast, the effect of California law on the price terms at issue is neither "tenuous" nor "peripheral;" it is squarely at the heart of the matter. Plaintiffs, after all, challenge the very reasonableness of the prices and incentives that UPS had the discretion to set. Indeed, the brunt of Plaintiffs' claim—as implied under California law—is that UPS is *not* "free to set whatever . . . prices [it] want[s]." *Id.*

court considers Defendants' arguments in turn.

### CFIL Preemption

Defendants argue section 31306 of the CFIL should be read as preempting Plaintiffs' common law claims for fraud and negligent misrepresentation. That section provides: "Except as explicitly provided in this chapter [describing the remedies available under the CFIL], no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder." (Mot. at 11.) Plaintiffs counter with an apparent saving clause from that same section: "Nothing in this chapter shall limit any liability which may exist by virtue of any other statute or under common law if [the CFIL] were not in effect." (*See* Opp'n at 9–10.)

■ Although caselaw is scant, and none is directly on point, the court finds that those allegations of fraud that are based on CFIL violations are preempted, while claims independent of CFIL violations are not. Put differently, section 31306 is best understood as displacing those claims that rest on misrepresentations or omissions covered by the several provisions of the CFIL, and the saving clause merely clarifies that the CFIL does not completely preempt the field. *See, e.g., Viva! Intern. Voice For Animals v. Adidas Prom. Retail Ops., Inc.*, 41 Cal.4th 929, 944, 63 Cal.Rptr.3d 50, 162 P.3d 569 (2007) ("[I]nclusion of savings clause in a statute negates field preemption").

This straightforward interpretation gives meaning to both sections, reconciles any perceived inconsistency, and comports with fundamental principles of statutory construction. *See, e.g., Cummins, Inc. v. Superior Court*, 36 Cal.4th 478, 487, 30 Cal.Rptr.3d 823, 115 P.3d 98 (2005) ("We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole."); *Halbert's Lumber, Inc. v. Lucky Stores, Inc.*, 6 Cal.App.4th 1233, 1239, 8 Cal.Rptr.2d 298 (1992) ("[We] apply reason, practicality, and common sense to the language at hand. If possible, the words should be interpreted to make them workable and reasonable ... in accord with common sense and justice, and to avoid an absurd result."); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384–85, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general.").

Here, it certainly would appear absurd to conclude, as Plaintiffs propose, that what the first clause in section 31306 gives, the second takes away. The first clause specifically provides that, other than those remedies provided under the CFIL, "no civil liability in favor of any [ ] party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder." This language clearly suggests that the CFIL shall be the exclusive remedy for claims alleging misrepresentations violative of "any [CFIL] provision."

For example, section 31200 of the CFIL contemplates "liability for misleading statements contained in documents filed with the Commissioner of Corporations" and "section 31201 involves misleading statements of material facts [ ] other than those matters contained in documents filed with the Commissioner." *People ex rel. Dept. of Corp. v. SpeeDee Oil Change Sys., Inc.*, 95 Cal.App.4th 709, 721–22, 116 Cal. Rptr.2d 497 (2002) (*SpeeDee Oil*). Pursuant to the first clause in section 31306, claims alleging misrepresentations falling within the scope of these two sections may be only brought under the CFIL.

The second clause merely qualifies the first by assuring "the [continuing] vitality

of 'those claims that are not expressly preempted.'" *Cortez v. MTD Prod., Inc.,* 927 F.Supp. 386, 391 (N.D.Cal.1996) (citation omitted) (construing federal statute); *see also Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 385, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ("A general 'remedies' saving clause cannot be allowed to supersede the specific substantive preemption provision."). Rather than render 31306 inconsequential by interpreting its saving clause as superseding the preemption language, the court concludes that section 31306 bars claims that may otherwise be brought under the CFIL—*i.e.,* those claims alleging misrepresentations and omissions covered by such provisions as 31200 and 31201. The saving clause is properly read as ensuring that any claims beyond the CFIL's coverage may be brought independently.

This interpretation is contextually supported by *SpeeDee Oil,* 95 Cal.App.4th at 709, 116 Cal.Rptr.2d 497. While this case does not expressly hold that section 31306

preempts fraud causes of action, as Plaintiffs point out, it is still instructive. Specifically, in the context of a fraud claim under the CFIL, that court rejected the doctrine of tolling applicable to common law fraud because it found that section 31306 limits remedies for statutory violations to those provided under the CFIL. *Id.* at 721–26, 116 Cal.Rptr.2d 497. Were this court now to hold that claims based on CFIL violations are not preempted, then plaintiffs could simply circumvent the CFIL's statutory scheme (and its statutes of limitations) by styling their CFIL claims as common law fraud. Such a result would seemingly undermine both *SpeeDee Oil* and the CFIL as a whole.[5]

Accordingly, because Plaintiffs' fraud claim appears to rest exclusively on alleged misrepresentations and omissions statutorily covered by the CFIL, and they cite no common law basis supporting the fraud recovery independent of the CFIL, section 31306 precludes Plaintiffs' common law claims.[6]

---

**5.** Like Plaintiffs' fraud claim here, the *SpeeDee Oil* plaintiffs' CFIL claims arose "from their execution of the local franchise agreements and representations made to them prior to signing the contracts." *SpeeDee Oil,* 95 Cal.App.4th at 723, 116 Cal.Rptr.2d 497. That court went on to hold that the statute of limitations for purposes of a section 31200 claim (misrepresentations in documents filed with the Commissioner of Corporations) is an absolute four years, and that for section 31201 (other misrepresentations) is two years.

**6.** Plaintiffs' bare citation to *Spahn v. Guild Indus. Corp.* appears misplaced. 94 Cal. App.3d 143, 156 Cal.Rptr. 375 (1979) (*Spahn*). Although that case discusses fraud under a separate heading, it merely addresses common law "respondeat superior" liability—apparently with reference to "the provision of individual liability for fraud under section 31302 of the Corporations Code." *Id.* at 157 n. 9, 156 Cal.Rptr. 375. Thus, to the extent controlling, *Spahn* addresses a CFIL-based fraud claim, and is in fact consistent with this court's holding. *Cf.* Cal. Corp.Code

§ 31012 ("[CFIL] 'Fraud' and 'deceit' are not limited to common law fraud or deceit.").

As relevant here, the allegations underlying Plaintiffs' fraud and negligent misrepresentation claims consist of representations and omissions found in the Risk Factors Agreement/FOC and others made at promotional "road shows." (*See* 4th Compl. ¶¶ 151,68, 69, 74–80). Thus, under the court's interpretation of section 31306, that part of Plaintiffs' claims arising out of representations in the FOCs falls under (and is preempted by) section 31200 of the CFIL—covering misrepresentations in documents filed with the Commissioner of Corporations. *See* Cal. Corp. Code § 31114 ("The application for registration shall be accompanied by a proposed offering circular."); *see also* 4th Compl. ¶ 75 ("FOC included the franchise agreements and attachments that [underlie the misrepresentation claims]."). As to the misrepresentations and omissions relating to the "road shows," they are covered by section 31201 of the CFIL—omissions and misstatements outside registered documents.

*Bowden v. Robinson*

During the hearing on these motions, Plaintiffs raised a new argument meriting discussion. Specifically, Plaintiffs argued that the interpretation of section 31306 should be governed by *Bowden v. Robinson*, 67 Cal.App.3d 705, 136 Cal.Rptr. 871 (1977). In *Bowden*, the California Court of Appeal concluded that "Sections 25510 and 25006 [of the Corporations Code] express a clear legislative intent for the Corporate Securities Law of 1968 to supplement common law causes of action, not to repudiate them." *Id.* at 716, 136 Cal.Rptr. 871. Sections 25510 and 25006 are virtually identical to CFIL sections 31306 and 31012, respectively, and the argument is that the latter should be similarly interpreted as supplementing (rather than displacing) common law fraud. Although Plaintiffs' argument is appealing, it is not dispositive.

First, the Supreme Court of California has directed that "When legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation." *Belridge Farms v. Agricultural Labor Relations Bd.*, 21 Cal.3d 551, 557, 147 Cal.Rptr. 165, 580 P.2d 665 (1978). *Bowden* raises no such presumption here because its interpretation succeeded the 1971 enactment of the CFIL. It cannot be presumed, therefore, that the legislature intended section 31306 to have the same meaning articulated in *Bowden* six years later. The court's own research reveals no such caselaw predating the CFIL.

Second, while the CFIL was modeled after securities law, the relevant statutes are sufficiently different to warrant divergent interpretations. Notably, the court in *Bowden* made much of the fact that "the Corporate Securities Law of 1968 clearly indicates a legislative intent to provide for actions and remedies for corporate securities victims *far less burdensome* than those available under common law." *Bowden*, 67 Cal.App.3d at 716, 136 Cal.Rptr. 871 (emphasis added). Aside from dispensing with the need to show causation, that statute also "conspicuously avoid[ed] the requirement of 'actual reliance.'" *Id.* That court thus rightly found that while securities laws lessen "the formidable task of proving common law fraud," plaintiffs are free to pursue such claims independently *Id.* at 714, 136 Cal.Rptr. 871. Such reasoning is inapplicable here.

A plaintiff must show both causation and actual reliance under the CFIL, *see* Cal. Corp.Code §§ 31300, 31301, and the statute reveals no appreciable disconnect between statutory and common law fraud—as that found under securities law.[7]

This court is further disinclined to adopt *Bowden*'s interpretation in light of *Spee-Dee Oil*'s direction that common law tolling does not apply to CFIL fraud. As discussed above, such interpretation would thwart the CFIL's exclusive remedies provision for qualifying violations and circumvent its statutes of limitations. The court reiterates that its holding is limited to those fraud allegations raised in this case, and does not foreclose common law fraud independent of CFIL violations.[8]

---

7. Section 31301 provides: "Any person who violates Section 31201 shall be liable to any person (not knowing or having cause to believe that such statement was false or misleading) who, while relying upon such statement shall have purchased a franchise, for damages, unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know, (or if he had exercised reasonable care would not have known) of the untruth or omission."

8. This discussion regarding CFIL preemption under section 31306 does not control the outcome of Plaintiffs' claims, as Defendants'

### 3. Eighth Claim: CFIL Violations/Fraud

Before considering the parties' arguments, it first bears setting out that part of the statutory framework underlying Plaintiffs' CFIL claims. Specifically, Plaintiffs allege violations under three different sections—Cal. Corp.Code §§ 31200, 31201 and 31202. First, section 31200 involves misstatements or omissions in documents filed with the Commissioner of Corporations (the FOCs).[9] Violation of this section is actionable under section 31300 and is governed by an absolute four-year statute of limitations found in section 31303. *See SpeeDee Oil*, 95 Cal.App.4th at 722, 116 Cal.Rptr.2d 497.

Second, section 31201 involves "misstatements or omissions of fact other than those made to the Commissioner of Corporations" (the "road shows"); it is actionable under section 31301 and is governed by a two-year limitations period found in section 31304. *Id.*[10] Lastly, section 31202 prohibits willfully untrue statements or omissions made "in any statement required to be disclosed in writing pursuant to Section 31101 [exemption requirements]."[11] Like section 31200, this section is actionable under 31300 and is governed by the four-year statute of limitations found in section 31303.

Defendants argue because the Phase I Plaintiffs are non-California franchisees, they "can bring only the second type of claims, those arising under section 31201." (Mot at 24 n. 14.) Defendants point to section 31105 in support of this argument, which provides: "Any offer, sale, or other transfer of a franchise, or any interest in a franchise, to a resident of another state

observed during the hearing. As discussed below, all fraud allegations are considered under a CFIL standard largely coextensive with common law fraud. *See, e.g., Traumann*, 858 F.Supp. at 985 (*Spahn* held that "trial court erred by failing to instruct [the] jury on every element of common law fraud for [a CFIL] misrepresentation claim under § 31301."). The decisive elements are thus the same, but, while the CFIL borrows common law respondeat superior liability, *Spahn*, 94 Cal.App.3d 143, 156 Cal.Rptr. 375, it does not recognize common law tolling principles. *SpeeDee Oil*, 95 Cal.App.4th 709, 116 Cal. Rptr.2d 497.

The court addresses the issue of preemption because it was squarely raised by Defendants and, considering the dearth of clear precedent, the question merits consideration—whether on appeal or, preferably, by California state courts. In short, *SpeeDee Oil* militates against an independent common law cause of action for fraud based on CFIL violations as such avenue would circumvent the dictates of the statutory scheme—including its absolute statutes of limitations. Whether section 31306 is read as preempting certain allegations of fraud, as this court finds, or merely limiting common law fraud by dispensing with common law tolling principles, as *SpeeDee Oil* provides, it cannot be said based on the foregoing that all allegations of fraud are independently actionable under both theories—aside from the plain redundancy of such exercise.

9. Section 31200 provides: "It is unlawful for any person willfully to make any untrue statement of a material fact in any application, notice or report filed with the commissioner under this law, or willfully to omit to state in any such application ... any material fact which is required to be stated therein ..."

10. Section 31201 provides: "It is unlawful for any person to offer or sell a franchise in this state by means of any written or oral communication not enumerated in Section 31200 which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

11. Section 31202 provides: "It is unlawful for any person willfully to make any untrue statement of a material fact in any statement required to be disclosed in writing pursuant to Section 31101, or willfully to omit to state in any such statement any material fact which is required to be stated therein."

... shall be exempted from the provisions of Chapter 2 (commencing with Section 31110) of this part, if all locations from which sales, leases or other transactions between the franchised business and its customers are made, or goods or services are distributed, are physically located outside this state." Cal. Corp.Code § 31105. It is undisputed that Plaintiffs operate franchises outside of California. (Mot. at 23) (*citing* 4th Compl., Exh. 2 ¶¶ 5, 41, 92, 98).

Plaintiffs contend "the exemption [ ] that Defendants rely on only exempts franchisors from *registering* offerings made to out of state residents and has nothing to do with the antifraud provisions of the CFIL." (Opp'n at 22) (emphasis in original). Thus, to resolve this issue, the court must assess the scope of "Chapter 2."

It is true, as Defendants point out, that Chapter 2 is titled "Disclosure." But that is neither determinative nor instructive. First, as the California Supreme Court observed, the Corporations Code expressly provides that "Title, division, part, chapter, article, and section headings contained herein do not in any manner affect the scope, meaning, or intent of the provisions of this code." *Snukal v. Flightways Mfg., Inc.*, 23 Cal.4th 754, 778 n. 7, 98 Cal. Rptr.2d 1, 3 P.3d 286 (2000) (*quoting* Cal. Corp.Code § 6.); *see also City of Berkeley v. Cukierman*, 14 Cal.App.4th 1331, 1340, 18 Cal.Rptr.2d 478 (1993) (titles and headings "do not control the provisions of a statute, nor can they be used to create ambiguity").

Second, a review of Chapter 2—Cal. Corp.Code §§ 31110–31125—reveals that it deals primarily with registration procedures and requirements. Section 31110, for example, prohibits the sale of franchises "unless the offer [ ] has been registered." Similarly, the remaining sections address the "filing of [an] application" (31111); application "signature and verification" (31112); the inclusion of "a proposed offering circular" with the registration (31114); "stop order of registration" (31115); "effective date of registration" (31116); submission of offering circulars to prospective franchisees of any franchise "subject to registration" (31119); "period of registration" (31120); and "amendment" of applications for registration. (31123).

Defendants contend, because section 31114 requires the application for registration to include a proposed offering circular—containing "the material information set forth in the application for registration"—section 31105 exempts them from complying with FOC and other "disclosure" requirements for sale of franchises to [Plaintiffs]." Although the parties have not adequately briefed the issue, and caselaw is wanting, the court rejects Defendants' argument.[12]

■ The court finds that, while section 31105 exempts Defendants from registering applications which contain FOCs (section 31114), and from producing FOCs to out-of-state franchisees (section 31119), it does not shield them from liability for misrepresentations found in registered documents that they voluntarily produce to out-of-state franchisees—and upon which those franchisees rely to their detriment. In other words, Plaintiffs may not state a claim against Defendants for Defendants' failure to register the franchise or provide

---

**12.** Section 31114 provides: "The application for registration shall be accompanied by a proposed offering circular, which shall contain the material information set forth in the application for registration, as specified by rule of the commissioner, and such additional disclosures as the commissioner may require. The offering circular shall recite in bold type of not less than 10–point type that registration does not constitute approval, recommendation, or endorsement by the commissioner."

FOCs, as provided in Chapter 2. Plaintiffs may, however, state a claim for misrepresentations found in such documents as Defendants produced and Plaintiffs relied on. The court finds this reading reasonable and in keeping with the spirit of the CFIL. *See* Cal. Corp.Code 31001 (CFIL intended "to provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered[,]" "to prohibit the sale of franchises where the sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled, and to protect the franchisor and franchisee by providing a better understanding of the relationship between the franchisor and franchisee with regard to their business relationship.") (Cal.Corp.Code, § 31001.)

### Section 31200

Section 31200, which is actionable under section 31300, prohibits misleading representations and omissions found in registered documents. Plaintiffs' allegations under this section are based on certain representations found in the Risk Factors Acknowledgment, which is part of the FOC. Specifically, Plaintiffs assert that MBE deceptively represented that "the success or failure of your business will depend primarily on your local marketing efforts;" "earnings and profits will be primarily dependent on your own individual efforts in operating your centers;" and that "high levels of customer service would enable franchisees to 'develop and/or sustain a sufficient customer base to' achieve profitability." (4th Compl. ¶ 78.)

■ Defendants argue these representations are not actionable and, alternatively, that Plaintiffs could not reasonably have relied on such representations as a matter of law. The court agrees. First, to the extent the RFAs could be read as providing (as opposed to disavowing) any representation regarding profitability, the challenged language merely concerns future events; mainly, Plaintiffs' efforts in running their stores and the correlated profitability. Such predictions are not actionable. *See Neu–Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal.App.4th 303, 309, 103 Cal.Rptr.2d 159 (2000) ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions.").

■ Second, the challenged representations are found in the RFAs, wherein Plaintiffs explicitly accepted the risks associated with the venture, and acknowledged that "MBE CANNOT GUARANTEE THAT YOUR BUSINESS WILL EVER ACHIEVE PROFITABILITY." (Joint Stip. ¶ 8, Exh. H at FOC 11.) Thus, to the extent the RFAs may be read as giving rise to actionable misrepresentations, Plaintiffs' alleged reliance is unjustifiable as a matter of law. *See Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239, fn. 4, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995) ("whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.") (internal quotation marks and citations omitted); *see also SpeeDee Oil*, 95 Cal.App.4th at 725–26, 116 Cal.Rptr.2d 497 ("In the absence of [reasonable] reliance, no liability can arise under [CFLA] section 31300.").

Here, in effect, Plaintiffs purport to rely on Defendants' disclaimer of liability, the RFAs. As the very notion suggests, such reliance is patently unreasonable. *See In re Rexplore, Inc. Sec. Litig.*, 671 F.Supp. 679, 683 (N.D.Cal.1987) ("Memorandum is replete with disclaimers and warnings, thus making the investors' reliance [ ] unjustified as a matter of law."); accord *Winn v. McCulloch Corp.*, 60 Cal.App.3d 663, 671, 131 Cal.Rptr. 597 (1976) (mere negligent reliance is not unreasonable as matter of law).

Plaintiffs also argue that the RFAs concealed "known risks of unprofitable controlled margins, drop-offs, drop boxes, internet shipping, and other [unspecified] factors." (Opp'n at 13.) This allegation stems from Plaintiffs' belief that Defendants intended to compete with Plaintiffs and so priced their services as to ensure the failure of Plaintiffs' businesses and the enrichment of Defendants. Not only does this argument lack business sense, as Defendants point out, but it is also belied by the record. As discussed above, Defendants reserved the right to contact customers; Plaintiffs agreed to accept UPS drop-off packages; and Defendants disclosed their prices and incentives—expressly reserving the right to modify them. Plaintiffs do not allege that Defendants raised their prices and/or reduced Plaintiffs' incentives. Nor do Plaintiffs adduce appreciable evidence supporting their theory.

Finally, Plaintiffs base their fraud claim on language in the FOCs providing that "the core underlying business that we [MBE] are franchising remains the same as the business we and our predecessors have franchised for over 20 years." (Opp'n at 13). Plaintiffs then conclude, without supporting evidence, that factual disputes preclude summary judgment "because, inter alia, [the prior system] offered a multi-shipper platform and did not allow for controlled margins." (Id.)

This statement is indeed actionable, as Plaintiffs argue, but it does not support Plaintiffs' claim in this case. First, as Defendants point out "[t]he very next sentence in the FOC refers the reader to the 'more detailed discussion below in this Item.'" (Mot. at 13) ("That discussion explains that ... The UPS Store would 'change certain operating procedures.'").

Second, to the extent that any undisclosed change in Defendants' system is based on franchisees' inability to exceed the maximum prices set by Defendants, Plaintiffs expressly assented to these "controlled margins." Thus, Plaintiffs cannot now complain that Defendants misrepresented the very matter.

As to the "multi-shipper platform," Defendants argued that "the [FAs do not] prohibit Plaintiffs from offering multi-carrier shipping services." (Mot. at 12) ("[I]f a carrier such as FedEx elected not to offer services [ ], that is [ ] beyond Defendants' control."). Plaintiffs do not address this argument or otherwise raise a genuine issue for trial. Accordingly, because none of the representations in the FOCs and RFAs support fraud recovery under section 31200, Defendants' motion is GRANTED.

*Section 31201*

Section 31201 prohibits misrepresentations, other than those in documents registered with the Commissioner. Plaintiffs' sole claim under this section appears to arise from alleged misrepresentations made at promotional "road shows." Defendants argued in their moving papers that none of the Phase I Plaintiffs attended these "road shows" and Plaintiffs do not dispute this fact. Accordingly, because Plaintiffs cannot support a claim for fraud under the CFIL, Defendants' motion is GRANTED.[13]

*4. Tenth Claim: Bus. & Prof.Code §§ 17200 and 17500, et seq.*

Plaintiffs' UCL claims turn on the allegations discredited above, and fail for much the same reasons. (*See* Mot. at 20–23.) As Defendants point out, moreover, Plaintiffs lack standing under these statutes because neither Plaintiffs' "unrealized profits" nor their "franchise fees" amount

---

**13.** The court finds no allegations supporting

Plaintiffs' fraud claim under section 31202.

to "lost money" under sections 17200 or 17500. (Id. at 20.) Defendants' motion as to this claim is therefore GRANTED.

### 5. Eleventh Claim: Breach of Non–California Laws

██ Defendants argue this claim "fails because Plaintiffs' Agreements are governed by California law." (Mot. at 23) (citation omitted). Plaintiffs contend "conflict of law principles" suggest otherwise. (Opp'n at 20–21.)

██ Briefly, as Plaintiffs argue, "[i]n determining the enforceability of arm's-length contractual choice-of-law provisions, California courts [ ] apply the principles set forth in Restatement [Second of Conflict of Laws (Restatement) ] section 187, which reflects a strong policy favoring enforcement of such provisions." *Expansion Pointe Properties Ltd. Partnership v. Procopio, Cory, Hargreaves & Savitch, LLP,* 152 Cal.App.4th 42, 58, 61 Cal. Rptr.3d 166 (2007) (citation omitted). As the California Supreme Court articulated:

"[T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of

law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .' [Citation.] If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy."

*Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 482, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992).

Here, MBE is a California corporation and the franchisor of The UPS Store. The "choice of law" clause is thus substantially related to the parties, including Plaintiffs, who contracted with a California corporation and filed their action in this state. The clause is also reasonably understood as Defendants' attempt to avoid nationwide litigation and invoke the laws of their home state. This is sufficient under both tests one and two above. *Id.* The third inquiry also favors enforcement of the provision because California is the chosen state whose laws shall govern, and no conflict exists. California has expressed a fundamental policy in enacting the CFIL, and Plaintiffs' claims were duly adjudicated thereunder. Accordingly, California law governs, and Defendants' motion as to this claim is GRANTED.

### 6. Declaratory Relief and Rescission

██ Declaratory relief and rescission are not independent claims, they are remedies. In light of the foregoing, Plaintiffs are not entitled to such relief.[14]

---

14. Plaintiffs only sought rescission based on their fraud claim, but the remedy was also available under the CFIL, which displaced Plaintiffs' fraud claim. *See Little Oil Co., Inc. v. Atl. Richfield Co.,* 852 F.2d 441, 447 (9th Cir.1988) ("The exclusive remedies available under California's Franchise Investment Law are damages and rescission.") (citing Cal. Corp.Code §§ 31300, 31306). As discussed above, the allegations underlying both claims are identical, and all were considered under the CFIL.

## V. CONCLUSION—Phase I

Defendants did not breach the "best efforts" and "consultation" provisions; the Risk Factors Acknowledgment does not impose on Defendants contractual duties; Plaintiffs adduce no evidence as to other alleged breaches; and Plaintiffs' bad faith claim regarding the reasonableness of UPS prices is preempted by federal law. Accordingly, Defendants' motion for summary judgment as to breach of contract is GRANTED. Plaintiffs' fraud and negligent misrepresentation claims are preempted by the CFIL (section 31306). Plaintiffs cannot support a CFIL fraud claim based on alleged misrepresentations in the RFAs or at promotional "road shows." Plaintiffs' claimed reliance is also unjustifiable as a matter of law, and Defendants' motion as to the CFIL claim is GRANTED. Because Plaintiffs' substantive claims fail, Defendants' motion for summary judgment as to the unfair competition laws (Cal. Bus. & Prof.Code §§ 1700, 17500) is GRANTED. Defendants' motion as to the violation of non-California laws is also GRANTED. Finally, because Plaintiffs' claims for affirmative relief fail, they are not entitled to the requested remedies.

### Phase II

The Phase II Plaintiffs' claims largely replicate those discussed under Phase I. The court will therefore limit its inquiry to the differences, and elaborate where necessary—all with reference to the foregoing analysis.

The Phase II Plaintiffs are "Dudley," centers 94 & 2109, and "Johnson," centers 894 & 1300 (selected by Plaintiffs), and "Bull," center 4069, and "Skiersch," center 4099 (selected by Defendants). The moving Defendants are Mail Boxes Etc. USA, Inc., Mail Boxes Etc., Mail Boxes Etc., Inc., and United Parcel Service, Inc (DE, NY, and OH). (Phase II Mot. at 1.)

### 1. First Claim: Breach of Contract and Good Faith

This claim fails for the same reasons discussed under Phase I. To the extent Plaintiffs contend the Carrier Agreement contained open price terms, requiring Defendants to set them reasonably, they are mistaken. As Defendants point out, the Carrier Agreement "is not a contract with an 'open price term' because it expressly states that the price [ ] UPS would charge the franchisee was the price set forth in the UPS Rate and Service Guide, available on line, reduced by the incentive that was expressly stated in the [agreement]." (Phase II Reply at 4.)

Plaintiffs' remaining arguments, primarily aimed at Defendants' good faith obligations, do not preclude summary judgment. Plaintiffs have neither raised a genuine issue as to Defendants' assent to a contractual good faith obligation nor, had they done so, that Defendants in fact breached that duty. Plaintiffs' sole evidence in support of this argument is a hearsay e-mail of questionable origin and significance, which cannot add to or contradict the parties' integrated agreement. (*See* Phase II Opp'n at 4; Phase II Reply at 2–3.)

### 2. Third and Fifth Claims: Fraud and Negligent Misrepresentation

The allegations supporting these claims are the same as those underlying the Phase I Plaintiffs' claims, except that some of the same challenged representations are found in the Gold Shield Amendment. These claims are preempted, and will be considered under the CFIL.

### 3. Seventh Claim: CFIL Violations/Fraud

These claims fail for much the same reasons discussed above. Insofar as these Plaintiffs allege claims under 31200 arising

from Defendants' alleged failure to register the Gold Shield Amendment as a "material modification" to the Mail Boxes Etc. franchise, those claims are barred by section 31105, which precludes out-of-state franchisees from maintaining claims for violation of Chapter 2. *See* 723–25, *supra.*

Plaintiffs also allege fraud based on flawed Gold Shield testing and material omissions relating to those tests. (Phase II Opp'n at 16) ("Unbeknownst to Plaintiffs, UPS had run a five-month test in mid to late 2001 'in selected markets' on the effect of going to a lower price/higher volume model plan[ ] of [T]he UPS Store."). Primarily, Plaintiffs point to a paper by David Mounts, which allegedly shows that conversion to The UPS Store would be unprofitable. (Id. at 16–17.) As Defendants point out, however, "the document on which Plaintiffs so heavily rely is a school paper co-written by a former UPS employee and five other students, purely to satisfy an academic requirement." (Phase II Reply at 5). A review of the evidence, including Mr. Mounts' deposition testimony, confirms the nature of this inadmissible document, and the futility of Plaintiffs' argument. (Id. at 5–6.)[15]

Plaintiffs next attack "the Gold shield tests that were conducted in 2002 in San Antonio, Seattle, St. Louis, Greenville, Harrisburg, and Phoenix." (Phase II Opp'n at 17.) Plaintiffs argue, "[b]ecause the [test] results were so poor, Defendants controlled the methodology and results." (Id.) But Plaintiffs offer no evidence that the test results were poor—aside from their misplaced reliance on the Mounts paper. Nor is it clear what misrepresentation caused them damage—that Defendants had sufficiently tested for profitability, or that Defendants had misrepresented the results.

Similarly vague (and seemingly unfounded) is Plaintiffs' contention that Defendants manipulated the Franchise Advisory Committee to gain their endorsement of the conversion to The UPS Store. While the Committee did express concern regarding the proposed conversion, (Opp'n at 17), Plaintiffs offer no evidence that Defendants obtained the Committee's endorsement by manipulation or coercion.

Finally, the court notes the futility of Plaintiffs' block-citation to sixty (60) alleged facts purporting to demonstrate Defendants' several misrepresentations and omissions. (*See* Phase II Opp'n at 16–18) (citing UF 46–106). Aside from the fact that these allegations are unsupported, immaterial, and/or otherwise inadmissible, Plaintiffs' indiscriminate offering is decidedly insufficient at this stage in the litigation.[16]

---

**15.** Plaintiffs argue Defendants failed to test for "net profits" despite promising that "profitability would be a main concern." (Opp'n at 16.) It is not altogether clear how this allegation gives rise to a fraud cause of action. Defendants did not purport to study "net profits;" Plaintiffs allege no such representation; and Plaintiffs admit they were informed of the nature of the testing by a "a carefully scripted power-point presentation"—with multiple references to "gross profits." (UF 46; *see also* Phase II Reply at 6 n. 6.)

**16.** "A party opposing a summary judgment motion must produce *specific* facts showing that there remains a genuine factual issue for trial and evidence significantly probative as to any material fact claimed to be disputed." *Jespersen v. Harrah's Operating Co., Inc.* 444 F.3d 1104, 1111 (9th Cir.2006) (emphasis in original); *see also Forsberg v. Pacific N.W. Bell Tel. Co.,* 840 F.2d 1409, 1418 (9th Cir. 1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment"). Plaintiffs' block-citation to sixty purported facts is not specific (or significantly probative) enough to defeat summary judgment.

### 4. Plaintiffs' Remaining Claims

The remaining claims fail for the same reasons discussed above, the requested relief is denied, and Defendants' motion as to these claims is therefore GRANTED.

### CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is GRANTED in its entirety.[17]

**IT IS SO ORDERED.**

---

17. With the exception of those sections noted above, this order was initially issued as the court's tentative. Plaintiffs were then given an opportunity to oppose it as they saw fit. At the hearing, Plaintiffs reiterated the same arguments discussed herein. The court has carefully considered those arguments, but they do not warrant a different result.